| 26 | 359 |
| 80 | 633 |

J. W. McCOWN, JR., AND OTHERS V. W. D. HILL AND OTHERS.

In the calls of a grant, course and distance from an established point will prevail over a supposed line and corner which, at the time of the grant, had not been run and established. But if the line and corner called for had been run and established on the ground, previous to the grant, then they would prevail over course and distance.

APPEAL from Bell. Tried below before the Hon. N. W. Battle.

This was an action of trespass to try title, originally instituted in Milam county, wherein the land in dispute is situate, by the appellants against the appellees. The venue was changed to Bell, on application of the plaintiffs.

The defendants set up title in themselves, and also pleaded the statutes of limitation. With respect to the question of title, the controversy resolved itself into one of boundary; and as the opinion of the court relates to that question alone, the facts are here no further stated than they are pertinent to that feature of the case.

The defendants claimed under a grant of a league of land to Daniel Monroe, made on the 20th of March, 1835, the descriptive calls of which were as follows: "Beginning at a stake on the north bank of the San Andreas river for the S. W. corner of league No. 1, (giving bearing trees,) thence down the river with its meanders N. 78 E. 2850 varas; thence N. 19 E. 3230 varas, N. 62½ E. 2970 varas; thence N. 4 W. 1950 varas, to a stake on the bank of the river for the N. E. corner of league No. 1; from thence N. 71 W. 3620 varas, to a stake for the N. W. corner of said league; from thence S. 19 W. 8450 varas, to the place of beginning."

The plaintiffs claimed by deed through Amos Johnson, under a grant of four leagues of premium land made to Sterling C. Robertson, on the 1st day of April, 1835. In this grant there was a call for the N. E. corner of Lewis' survey, which adjoined but overlapped Monroe's league; and "thence S. 19 W. 860 varas, to the N. W. corner of Daniel Monroe's league; thence S. 71 E. 3620 varas, to Monroe's corner on the bank of Little river or

San Andreas river." This last line, it will be observed, is the reverse of the calls of the third or northern line of Monroe's league, being thus the co-terminus of both grants; and its true locality was the subject matter in controversy, so far as the question of boundary was concerned.

It was in evidence that, at the date of Robertson's grant, the lines and corners of Monroe's grant, with the exception of the beginning corner, had not been run or established. Hence, the north-west corner and northern line of Monroe's grant, called for in Robertson's grant, were supposititious objects, not in existence. The plaintiffs insisted that, irrespective of the distance from Lewis' corner, their southern limits should extend to a line to be designated as the northern boundary of Monroe's grant, according to the courses and distances called for in that grant. For the defendants, it was contended that the plaintiffs should be confined to a line extending from the point 860 varas south of Lewis' corner by course and distance to the river.

The cause came to trial at the December Term, 1858. The second instruction of the court to the jury was as follows: "That the grant to Robertson calls for the north-east corner of Lewis' survey, thence with the east line of that survey 860 varas to Monroe's north-west corner, and from that point with Monroe's northern boundary line to the river. Now, if the jury believe from the evidence that Monroe's north line was not run, and his north-west corner was not marked and established on the ground, then the court charges that said Robertson's grant stops at 860 varas from Lewis' north-east corner, and the plaintiffs cannot recover any land lying south of a line running from this point to the river, according to the course called for in Robertson's grant. But, on the contrary, if the jury believe from the evidence that Monroe's north-west corner was a marked and established corner, Robertson's line does not stop at 860 varas, but runs to Monroe's north-west corner so marked and established, disregarding the distance called for in his grant."

The jury returned a verdict for the defendants; the plaintiffs moved for a new trial, which was refused, and they appealed.

. (No brief for the appellants is found in the record.—REPS.)

McCown v. Hill.

A. W. Sneed, and Lewis, for appellees, cited 1 Douglass' Mich. R., 19; 3 Peters, U. S. R., 92, 96; 4 Wheat. R., 444; 5 Harris & Johnson R., 254; 2 Id., 267; 2 Bibb R., 493; 8 Wend. R., 190; 5 Cowen R., 371; 2 N. Car. R., 222.

BELL, J. The grant to Daniel Monroe was made on the 20th day of March, A. D. 1835. The grant to Sterling Robertson was made on the 1st day of April, A. D. 1835. The grant to Robertson calls for Daniel Monroe's north-west corner at a distance of 860 varas from the north-east corner of Lewis' survey. The deed from Robertson to Johnson also calls for Monroe's north-west corner. The testimony of Erath shows very clearly that Monroe's north-west corner had not been established at the date of the grant to Robertson, and at the date of Robertson's deed to Johnson, but was subsequently established by himself. In view of these facts, the court properly instructed the jury, that if they believed from the evidence that Monroe's north line was not run, and his north-west corner not marked and established on the ground, then Robertson's grant would stop at 860 varas from the north-east corner of Lewis' survey; and that the plaintiffs could not recover any land lying south of a line running from that point to the river, according to the course called for in Robertson's grant. If Monroe's north-west corner had been marked and established on the ground, then it cannot be doubted, independent of any agreement upon a dividing line by the parties in interest, that the line of Robertson's grant would have to be extended to Monroe's corner, and Monroe's grant would have to be confined to its marked corners and boundaries. These rules of law were all distinctly stated to the jury in the charge given them by the court. We can see no error in the judgment, and it is therefore affirmed.

Judgment affirmed.