**HART et al. v. DAGGETT.** (No. 11921.)

Court of Civil Appeals of Texas. Fort Worth. Feb. 18, 1928.

Rehearing Denied. March 24, 1928.

1. **Cancellation of instruments ⟨⟩25—Absence of warranty in lease or assignment held not bar to suit by assignee for cancellation for deficiency in acreage.**

In action by assignee for cancellation of assignment of lease and rental notes on ground of fraudulent representations or mutual mistake because of deficiency in acreage, fact that neither lease nor assignment contained any warranty did not bar recovery, since general covenant of warranty applies to the title, and not to the quantity of land, and is not broken by deficit in the quantity of acres named in the transfer.

2. **Cancellation of instruments ⟨⟩4—Designation in lease and representation as to acreage held sufficient ground for suit by assignee for cancellation because of deficiency.**

Designation in lease that ranch consisted of three sections, more or less, together with evidence of statement to assignee of lease in presence of lessee and owner that ranch contained 2,000 acres, and that assignee believed and relied on such representation, held sufficient ground for suit by assignee for cancellation because ranch contained only 1,398 acres.

3. **Cancellation of instruments ⟨⟩47—Evidence held not to show that assignee of lease seeking cancellation for deficiency in acreage satisfied himself as to amount of acreage.**

In suit for cancellation of assignment of lease and rental notes on ground of fraudulent representation or mutual mistake as to acreage, evidence held not to conclusively show that plaintiff, regardless of representations made to him, satisfied himself as to amount of acreage in ranch.

4. **Trial ⟨⟩351(5)—Refusal to submit issue of active fraud held not error, in view of findings on issue of constructive fraud and mutual mistake.**

In suit by assignee of lease to cancel assignment because of deficiency in acreage, refusal to submit issue of willful misrepresentations or active fraud was not error, where es-

sential elements of constructive fraud was submitted and determined in plaintiff's favor, and allegations of petition and jury's findings on issue of mutual mistake was sufficient to support judgment, regardless of issue of fraud.

**5. Cancellation of instruments ⬅️15—On material deficiency in acreage of ranch desired for special purpose, assignee of lease held entitled to rescind contract, though also entitled to damages.**

Where assignee of lease of ranch desired it for special purpose of having sufficient winter pasturage for cattle, *held* that, on disclosure of material deficiency in amount of acreage as' represented, assignee had an equitable right.to rescind contract, even though he might have kept ranch and resorted to legal remedy for damages.

**6. ·Cancellation of instruments ⬅️24(1)—Assignee of lease of ranch held not precluded from rescinding for deficiency in. acreage because of sale of cattle incidentally purchased.**

That assignee of lease of ranch and rental notes seeking cancellation on ground of deficiency in acreage had, before discovering deficiency, received and sold cattle which he had purchased at time of assignment, *held* not to preclude assignee's right to rescind, where ·purchase of cattle was·mere incident accompanying lease, and assignee had paid full price. ·

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by Port Daggett against J. O. Hart and others. From the judgment, defendant named alone appeals. Affirmed.

Crowley & Crowley, of Fort Worth, for appellant.

Phillips, Trammell & Chizum, of Fort Worth, and Nolan Queen, of Weatherford, for appellee.

CONNER, C. J. This suit was instituted by appellee, Daggett, against the appellants J. O. Hart, Charles F. Haynes, and, by amended petition, A. B. Hamm. The plaintiff alleged that on the 14th day of May, 1926, the defendants Haynes and Hart entered into an original contract whereby certain ranch land, described in the petition, owned by the defendant Haynes, was leased to Hart for a period of five years from said date, to be run and operated as a farm and ranch, and not otherwise, for which Hart agreed to pay Haynes the sum of $6,250, $500 in cash, $750 on January 1, 1927, and the remainder in semiannual installments of $625. ·

It was further alleged that Hart at the same time executed his note to said Haynes in the sum of $5,000, secured by a mortgage on certain cattle located.. on the premises, for which the note had been given. The land leased was described in part as follows:

· "All of ,the ranch commonly known as the Haynes ranch about three miles southeast of Weatherford, Parker county, Tex., consisting of three sections of land, more or less, including the fields, pastures, improvements," etc.

Plaintiff further alleged that later, to wit, in May, 1926, Hart desiring to sell and plaintiff desiring to buy, plaintiff went to Weatherford, and met the defendant Haynes, the defendant Hamm, being interested in some way with Hart, also being present, at which time during the negotiations the lease from Haynes to Hart was read, and, when that portion of the contract describing the amount of land covered by the lease as consisting of "three sections more or less" was read, the plaintiff interrupted with the statement that the contract did not read as covering 2,000 acres, as had been represented to him, and that the defendant Hamm then stated in the presence of both Hart and Haynes that, while the contract read "three sections more or less," there was an excess acreage which made at least 2,-000 acres; that the said Haynes and Hart, by their acts and conduct at the time, led the plaintiff to understand and believe that there was 2,000 acres covered by the lease contract, and plaintiff, so believing and relying on such representations and the acts and conduct of said parties, agreed to purchase the cattle and take over said lease, assuming said lease notes, and in addition thereto paying to Hart the sum of $1,250, Haynes agreeing to the assignment, but not releasing Hart.

Plaintiff further alleged that he had been on the premises prior to the purchase, but did not make any investigation as to the amount of acreage, but relied entirely upon the representations made to him by the defendants; that, after he took possession of the ranch, he learned there was only about 1,398 acres covered by the lease.

Plaintiff further alleged that he purchased the cattle along with the lease, but would not have done so, but was so required as a condition to the purchase of the lease, and that it was a part of the contract that he should take over and pay the note for $5,000 executed by Hart, as stated above, which he did; that he was in need of grazing land, and expected to feed cattle during the winter months; that in fact 1,398 acres was entirely inadequate for grazing the number of cattle contemplated by him, and that the representations relating to the number of acres in the ranch were false and fraudulently made to deceive, and did deceive, the·plaintiff into entering into the contract, and, but for such false and fraudulent representations upon which he fully relied, he would not have entered into the contract. Plaintiff therefore prayed for a judgment canceling the assignment from Hart to him and his assumption of the said notes from Hart to Haynes, and to recover the sum of $1,250 which he had paid to the defendant Hart for the lease.

By amended pleadings plaintiff further alleged that the cattle purchased by him at the

time of Hart's assignment of the lease had been sold by the plaintiff at a loss, and he sought by way of a cross-action to recover the difference between the amount he had paid for the cattle and the amount for which he had been able to sell 'them.

Defendant Hart filed special exceptions, and denied that he made any representations, guarantees, or warranties whatever, or any other agreement, except to sell to the plaintiff the lease contract and cattle for a bonus of $750; that he never knew how many acres were contained in the Haynes ranch; that he leased the same as a whole without knowing the exact number of acres contained therein; that plaintiff did go upon the premises on numerous occasions, and knew, or could have known, by the exercise of ordinary diligence, the·location of all the boundary lines of said tract of land and the number of acres contained therein. This defendant further pleaded specially that the plaintiff, after having discovered that said ranch did not contain 2,000 acres, acquiesced in, and accepted, the agreement, went upon the premises, gathered up the stock and sold them, and thereby ratified the contract.,

The defendant Hamm filed a general demurrer and a general denial. The defendant Haynes pleaded that he had no interest whatever in the contract between Daggett and Hart, and that there was no contract between him and·plaintiff, Daggett.

Plaintiff filed a supplemental petition, in which he denied the allegations in the answers of the several defendants, denied that Hamm ever represented the plaintiff, but, on the contrary, alleged that Hamm represented Hart; that the word "section," as used in the lease, was commonly known to mean 640 acres, and further pleaded to the effect that, if the defendants were unacquainted with the number of acres in the ranch, they at least made such representations which were in fact false, and that plaintiff's purchase and the assignment from Hart was all based upon the assumption that the ranch contained 2,000 acres of land, and that, if it was otherwise, the parties had been mutually mistaken.

The case was submitted to a jury upon special issues, which, together with the answers of the jury thereto, reflect the issues made by the pleadings. Omitting formal parts, the jury found that on May 31, 1926, the Haynes' ranch contained "1,398 acres"; that, at the time of the purchase of the lease by the plaintiff, Port Daggett, from the defendant Hart, Daggett relied upon the representations as contained in said lease that the same "contained three sections of land more or less"; that plaintiff, Daggett, would not have purchased said lease if such representations had not been made; that it was not the purpose of Daggett in the purchase of the lease to purchase the same "merely as a lease of all the land included in the fence around said

6 S.W.(2d)—10

ranch without reference to the number of acres therein contained"; that, at the time of the acceptance of the assignment of the lease by defendant Hart to the plaintiff,. Daggett, "it· was not understood and agreed by and between said Hart and Daggett that said Daggett was taking only such lease and the rights thereunder as were held by the defendant Hart, irrespective of, and without reference to, the number of acres covered by said lease"; that both defendant Haynes and defendant Hart, at the time of the assignment mentioned, believed that "there were approximately three sections of land in said ranch and inclosed by the fence surrounding same."

In answer to special issues requested by the plaintiff and given by the court, the jury further answered that the defendant A. B. Hamm, prior to, and at the time of, the execution of the assignment of the lease from Hart to Daggett, represented to said Daggett that "there were 2,000 acres in said Haynes ranch"; that the representations by said Hamm to Daggett as to the amount of acreage was "made in the presence and hearing of the defendant Chas. F. Haynes"; that the plaintiff Daggett believed in, and relied upon, "such representations made by said Hamm"; and that Daggett would not have entered into the contract of assignment "if such representations by said Hamm had not been made."

Defendant Hart also requested special issues, which were given by the court, and to which the jury answered that Port Daggett, "by his acts and conduct," did not "ratify" and approve said lease and accept the same after learning that the Haynes ranch did not in fact contain approximately three sections of land.

Upon the verdict so rendered, the court adjudged that the plaintiff, Daggett, received of the defendants Hart and Haynes jointly and severally the sum of $1,309.37, with interest from the date of the judgment at the rate of 6 per cent. per annum, and' all costs of suit for which execution might issue. The said sum of $1,309.37 was for the recovery of moneys paid to Hart by the plaintiff, Daggett, at the time of the assignment under consideration, and about which there is no dispute. By the decree the contract of assignment of the lease in question by Hart to the plaintiff, on May 31, 1926, as well as the contract of plaintiff's assumption of the rentals due on the lease from Haynes to Hart evidenced by notes described in the lease, were all rescinded and canceled, following the declaration in the decree that the plaintiff "does not agree and is not liable for any amount whatsoever due as rental on said lease, nor for any amount whatsoever due on the notes mentioned and described in said lease."

It was further agreed that the defendant Haynes recover from the defendant Hart all amounts which he (Haynes) may be required to pay plaintiff, Daggett. The court further found in favor of defendant A. B. Hamm as

against the plaintiff, Daggett, on the finding that Hamm "was acting only as agent of J. O. Hart in the transaction, and believed the representations made by him to be true, and was guilty of no actual fraud."

The plaintiff by cross plea had also sought to recover for losses to him, on the ground that he had soon after the assignment, and before he had learned of the falsity in the representations, sold the cattle at the best price obtainable for a sum less than he had paid for them at the time of the assignment of the lease to him. The decree denied plaintiff a recovery on this ground. From the judgment so rendered, the defendant Hart alone has prosecuted this appeal.

The record, appellant's propositions, and briefs of both parties are quite voluminous, and in the interest of brevity we will only undertake to dispose of the material questions presented as succinctly as we can.

[1] We overrule appellant's contention, based on exception to the petition and otherwise, that appellee was not entitled to recover, for the reason that neither the lease from Haynes to Hart nor the assignment from Hart to the plaintiff contained any warranty. The general covenant of warranty applies to the title and not to the quantity of land, and is not broken by a deficit in the quantity of acres named in the transfer. See Daughtrey v. Knolle, 44 Tex. 450; Brown v. Yoakum (Tex. Civ. App.) 170 S. W. 803. The plaintiff's action was essentially one for cancellation on the ground of fraudulent representations or mutual mistake.

Appellant's third proposition is that:

"Where the evidence shows that the assignee of a lease in bulk made an independent investigation and neither the lease nor the assignment contained any covenant of quantity, and no fraud was practiced on the assignee, he cannot rescind the contract because of an alleged shortage of land."

[2] We cannot assume, as does the proposition, that the evidence shows that the assignment of the lease was "in bulk"; that no fraud was practiced on the plaintiff, or that he made any such investigation of the premises as would debar him of the recovery awarded by the court. The findings of the jury, to which there is no exception as unsupported by the evidence, show that the lease on its face designates the number of acres as three sections more or less, and, while this recitation of itself would not entitle plaintiff to a rescission for an immaterial deficiency, yet, when read in the light of the undisputed testimony and the jury's finding, that the defendant Hamm in the presence of both Hart and Haynes unconditionally stated that there was 2,000 acres in the ranch instead of 1,398, as actually found, was a sufficient ground upon which plaintiff could base a recovery, when, as was further shown by the evidence and findings, plaintiff believed and relied on the representations set forth in the lease and as made by Hamm.

[3] The evidence on the issue of ratification was conflicting. In behalf of appellant, it was to the effect that plaintiff had visited the ranch several times, gone over it, had the corners pointed out to him, and that an employee of Haynes had told plaintiff that the ranch did not contain 2,000. Appellee's testimony, however, was to the effect that, while he had visited the ranch several times, and had been on its high points, yet he had no thought of making any investigation as to the acreage as had been represented to him, and that the statement of the employee mentioned had not been given credence, for the reason that prior thereto he had been told that said employee was antagonistic to Haynes, and his word was not to be relied upon.

Accompanying the record is a map showing the configuration of the ranch. It appears to be in a most irregular form, with some 17 different corners; the lines in many instances being irregular, and we do not think it can be said that, from a mere view of its outlines, it conclusively appears that appellee, regardless of the assurances given him, satisfied himself as to the amount of acreage. The issue of ratification was submitted to the jury and determined in plaintiff's favor, and we find no specific attack upon such finding.

[4] It was held, as early as the case of Mitchell v. Zimmerman, 4 Tex. 75, 76, 51 Am. Dec. 717, which has been followed many times since, that the owner of an estate is supposed to be peculiarly cognizant of its quantity and quality; and a person coming to purchase or lease naturally and properly looks to him for information, and has a right to expect the truth; and, where a misrepresentation as to quantity is made by the vendor, though innocently, if the misrepresentation is of a material fact, and relied on, the court will grant relief. The statement of Hamm at the time of the execution of the assignment was made in the presence of both Haynes and Hart, and they remained silent. It is true the findings are to the effect that both Haynes and Hart believed the ranch to contain 2,000 acres. Haynes testified, however, that he did not know the number of acres, but grounded his belief upon the conveyance to him, while Hart testified he leased the ranch as a whole, irrespective of its acreage. If in fact they were ignorant of the amount of the acreage, equity would require of them to so announce the fact at the very time Hamm made the representation he did. The court found that Hamm was the agent of Hart, and we find no proposition attacking such finding. It is contended, in effect, that, because of the finding that neither Hart nor Haynes knew the number of acres in the ranch, no fraud had been found, and one of appellant's complaints is that the court refused to submit the issue of fraud. A reading of the verdict, however, renders it evident that the essential elements

of constructive fraud was submitted and determined in appellees' favor by the jury. These findings, we think, have the same legal effect, under the issues in this case, as if the court had submitted, and the jury had found, willful misrepresentations—active fraud. Besides, the allegations of plaintiff's petition and the findings of the jury on the issue of mutual mistake as to the amount of acreage in the lease is sufficient to support the judgment, regardless of issues of fraud. See Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Brown v. Yoakum (Tex. Civ. App.) 170 S. W. 804; Carter v. Cole (Tex. Civ. App.) 42 S. W. 369; Daughtrey v. Knolle, 44 Tex, 450.

[5] It is also insisted that the court erred in refusing to submit a special issue requested by appellant soliciting a finding of whether plaintiff suffered any damage by reason of any deficiency in the number of acres in the tract leased by him, the contention being in substance, that the ranch was worth as much as plaintiff contracted to pay for it. As before noted, plaintiff's action was not the legal one for damages. It was one in equity for a rescission of the contract. Plaintiff's testimony indicated a special purpose in desiring the lease, to wit, that he might be enabled to have sufficient winter pasturage for cattle which he either owned or contemplated purchasing for resale. Under the terms of his agreement, read in the light of the representations made to him, he was entitled to receive substantially all that he contracted for. That there was a very material deficiency in the amount of acreage as represented is not disputed, and we find the plaintiff had under such circumsances an equitable right to rescind the contract, even though he might have kept the ranch and resorted to the legal remedy for damages. We think, under the circumstances, he had the right to choose that remedy which best conformed to his purposes and business. Hunt County Oil Co. v. Scott, 28 Tex. Civ. App. 213, 67 S. W. 451; 1 Black on Rescission of Contracts, § 177, and authorities cited in note 1 to the text. The author there says:

"When property is delivered in pursuance of a contract of sale, and the buyer finds that it is different from that which he contracted for and therefore unsuitable for his purpose or unsatisfactory to him, or that it is inferior in quality or short in quantity, he has the privilege of refusing to accept the property or of returning it to the seller, and thereupon of rescinding the contract entirely."

[6] Nor do we think the fact appearing in the record that the plaintiff had, before discovering the deficiency in acreage, received and sold the cattle purchased at the time of Hart's assignment, necessarily precludes the plaintiff's right to rescind the assignment and lease in so far as it affects him. Neither the lease nor assignment makes any reference to the cattle. The cattle were on the ranch at the time, and the contract with reference to them was oral—a mere incident of the accompanying lease contract—and entirely separable from that relating to the lease and assignment, it also appearing without dispute that plaintiff paid therefor the full price charged and received, at the best price obtainable for the cattle on the public market, a less sum than he paid for them. See Stanley v. Sumrell (Tex. Civ. App.) 163 S. W. 697; Smith v. Crosby, 47 Tex. 128.

The issue of ratification, indeed, all of the material issues, as it seems to us, was submitted to, and determined by, the jury in appellees' favor, and, as before stated, these findings have not been attacked as not supported by sufficient evidence, and we conclude that no reversible error has been shown, and that the judgment must be affirmed.