## PANDEM OIL CORPORATION v. GOODRICH.

### No. 2402.

Court of Civil Appeals of Texas. El Paso.
May 15, 1930.

Rehearing Denied June 5, 1930.

Winfrey & Lane, Murphy W. Townsend, Martin B. Winfrey, and Tom Scurry, all of Dallas, for appellant.

W. J. Rutledge, Jr., of Dallas, for appellee.

PELPHREY, J.

Appellee was the owner of an oil and gas lease on the whole of section 107, block 194, certificate 391, C. T. & M. C. Ry. Co. Lands, in Pecos county, Tex., containing 315 acres more or less.

He assigned the east 200 acres to the Pure Oil Company, the south 80 acres of the west 115½ acres to one Parten, and thereafter executed an assignment of the north 35½ acres of the west 115½ acres to appellant.

This suit was brought by appellant to rescind said last assignment and for the return of $25,000 alleged to have been paid to appellee for the assignment, and the further sum of $2,500 alleged to have been paid to a lease broker as a part of the consideration for said assignment.

Appellant based its right to rescission upon the ground of false representations as to the number of acres in the lease assigned to it, and by reason of the fact that appellee had reasonable grounds for knowing and believing and did believe and suspect that a shortage of acreage existed, but failed to disclose to appellant the facts known to him as to such shortage.

Appellee answered by general demurrer, special exceptions, general denial, and specially denied ever having made any representations as to the amount of acreage remaining unassigned, and alleged that it was understood and agreed by the parties at the time of the assignment that he would be absolved from any liability whatever growing out of the conveyance and the warranties therein contained.

In response to special issues the jury found: (1) That appellee represented to appellant that he owned a lease on at least 35½ acres of land; (2) that appellant believed such representations; (3) that appellant did not rely on such representations; (4) that the corner located by Dodd on the Pecos river as the southeast corner of section 70 and used by him in making his survey of the Runnels county school lands No. 3, in 1918, was not located at the same place that said corner was fixed by Kuechler in the original survey of section 70, in 1876; and, (5) that the location of the south line of section 70 made by Lea was at the same place as the line was located by Kuechler in 1876.

Judgment was rendered that the Pandem Oil Corporation take nothing, and it has appealed.

### Opinion.

■ Appellee objects to the consideration of this appeal by this court for the reason that it has not acquired jurisdiction on account of the following facts: That the term of court at which the cause was tried expired by operation of law on June 1, 1929; that final judgment was rendered and entered on the minutes on that date; that no motion for new trial was filed until June 7, 1929, which was the succeeding term of court; that an order was entered overruling the motion for a new trial on June 17, 1929.

The decision of this question is governed by the provisions of our statutes as to practice and procedure in civil district courts in counties having two or more district courts with civil jurisdiction only, whose terms continue for three weeks or longer. Article 2092 Revised Statutes (Complete Tex. St.) 1928.

Subdivisions 28 and 29 of the above statute read:

"Subdivision 28: A motion for new trial filed during one term of court may be heard and acted on at the next term of court. If a case or other matter is on trial or in process of hearing when the term of court expires, such trial hearing or other matter may be proceeded with at the next term of the court. No motion for new trial or other motion or plea shall be considered as waived or overruled, because not acted on at the term of court at which it was filed, but may be acted on at the succeeding term or at any time which the judge may fix or to which

it may have been postponed or continued by agreement of the parties with leave of the court. All motions and amended motions for new trial shall be presented within thirty days after the original motion or amended motion is filed and shall be determined within not exceeding forty-five days after the original or amended motion is filed, unless by written agreement of the parties filed in the case the decision of the motion is postponed to a later date."

"Subdivision 29: A motion for new trial where required shall be filed within ten days after the judgment is rendered or other order complained of is entered, and may be amended by leave of the court at any time before it is acted on within twenty days after it is filed."

The objection is not well taken, as the motion for new trial was filed within the ten days allowed by the statute and was overruled within the time provided for action thereon. Phil H. Pierce Co. v. Watkins, District Judge et al., 114 Tex. 153, 263 S. W. 905.

Among other assignments presented by appellant is one to the effect that the court should have peremptorily instructed the jury to return a verdict in its favor.

The reasons assigned by it for this contention are that the evidence disclosed as a matter of law that the acreage was materially less than 35½ acres; that the evidence is undisputed that appellee represented that he owned 35½ acres; that appellant believed such representation to be true, and relied thereon in making the purchase.

The trial court submitted no issue as to the amount of acreage, or as to whether there existed any material shortage.

The following issues, however, were submitted:

"Do you find from a preponderance of the evidence that the corner located by Dodd on the Pecos River as the southeast corner of Section 70 and used by him in making his survey of Runnels County School Lands No. 3, in 1918, was located at the same place that said corner was fixed by Kuechler in making the original survey of Sect. 70 Block No. 1, in 1876?" And—

"Was the location made by A. N. Lea, surveyor, in 1913 of the south line of Section 70 and used by him in preparing field notes of surveys 107 and 108 located at the same place as said line was located by Kuechler in 1876?"

As we understand the record, the question of whether a shortage exists depends upon the proper location of the southwest corner of the Runnels county school land No. 3, and the proper location of that corner depends upon the location of the southwest corner of section 70 and the south line of said survey.

In order that a better understanding may be had of the question here presented, and our discussion may be better understood, we are incorporating in the opinion a photostatic copy of Appellant's Exhibit 11:

material shortage in the lease attempted to be assigned. It seems to be well settled in this state that where parties have contracted in ignorance or mistake of a fact material and essential in the inducement to and for-

The question of first importance is whether or not the evidence is sufficient as a matter of law to show the existence of a mation of the contract, which mistake injuriously affects the rights and interests of one of the parties under the contract, a

court of equity will grant relief against the consequences of the mistake. O'Connell v. Duke, 29 Tex. 300, 94 Am. Dec. 282.

■ It seems also to be true that when the buyer of property finds that it is different from that for which he contracted, and therefore unsuitable for his purpose or unsatisfactory to him, or that it is inferior in quality or short in quantity, he has the privilege of returning it to the seller, and thereupon of rescinding the contract entirely.

1 Black on Rescission of Contracts, § 177, and authorities cited in note 1 to the text; Hart et al. v. Daggett (Tex. Civ. App.) 6 S.W.(2d) 143.

■ Therefore, if there is shown here a material shortage in the acreage conveyed by the purported assignment, and if the facts are sufficient to show that the sale was made upon a reliance by appellant that the acreage as called for was there, then we have a case in which appellant would be entitled to rescind the assignment.

The field notes of survey 70, as made by Kuechler in 1876, read:

"Beginning at a stone mound on the west bank of the Pecos River between two falls made for the upper corner of Survey No. 69, from which a forked hackberry bears west 9 varas; Thence west 4112 varas to a stake and mound, for southwest corner; Thence North 950 varas to a stake and mound; Thence east 3572 varas to a stone mound on the west bank of the Pecos River made for the upper corner of this survey; Thence down the river with its meanderings south 100 varas, south 31 east, 700 varas, south 35-¾ east, 308 varas, to the place of beginning."

Runnels county school land No. 3 is described in the original field notes as follows:

"Beginning at the southwest corner of Survey No. 70 made for the International & Great Northern Ry. Co. on the Pecos River in said County, Thence east 2494 varas to the northwest corner of Survey No. 69 made for the same Company; Thence South 950 varas to the southwest corner of said Survey 69; Thence East 1102 varas to the northwest corner of survey No. 68 for same Company; Thence south 950 varas to the southwest corner of said survey No. 68; Thence East 656 varas to the northwest corner of Survey No. 67, for same Company; Thence south 950 varas to the southwest corner of said Survey No. 67; Thence East 1910 varas to the northwest corner of Survey No. 66 for said Company; Thence South 950 varas to the Southwest corner of said Survey No. 66 for a corner of this Survey; Thence east 2177 varas to the northwest corner of Survey No. 65 for same Company, for a corner of this survey; Thence south 950 varas to the southwestern corner of said Survey No. 65, for a corner of

this Survey; Thence east 298 varas to the northwest corner of Survey No. 64 for said Company; Thence South 290 varas to a pile of rock in the east line of Survey No. 64, for the Southeast corner of this Survey; Thence west 8637 varas to a rock mound, for the Southwest corner of this survey; Thence north 5040 varas to the place of beginning."

In 1882 a corrected survey was made, changing two of the last three calls as follows:

"Thence south 162 varas to stake and mound, for southeast corner of this survey; Thence west 8637 varas to a stake and mound, for the southwest corner of this Survey; Thence North 4912 varas to the place of beginning."

In 1918, Captain Dodd, as official surveyor for the land office, did some surveying in this territory and located the southeast corner of survey No. 70 and the northeast corner of 69, which are the same. He made the following report:

"On seeking a starting point on the river we find the NE corner of survey 69 to be the first marked corner with bearings given, below the north corner of survey 72.

"The original meanders place this corner at a sharp bend of the river, nearly a right angle from S. E. to N. E. and continuing some 1600 varas east before turning south again, and no similar bend is shown for several sections up and down the river from this corner.

"The field notes call for a rock mound on the west bank of the Pecos River, between two riffles with a hackberry tree west 9 varas.

"In the report of Mr. Williams as Cor. Sur. Pecos Co. in 1892 he states that he found this corner and the Hackberry dead in place, and took a new bearing on a rock bluff S. 47 % E.

"We found a bend in the river closely corresponding to the original field notes, and a rocky hill with a bluff caprock S 47 % E, at this bend a draw runs in from the west, on the north edge of which are several small hackberry 4″ to 6″ in dia. but none marked. There is also a draw which runs into the river at this bend, from the south, with rock ledge showing on river bank, a riffle below the bend, and a gravel bar, once a riffle now cut through, above the bend. We were shown a rock mound marked 'NW 69' about 350 varas south of the south bank of the bend. In a former report we used a point 350 north of this rock mound as the probable location of the original corner N. E. 69, but a closer examination of the present river bank, noting the erosion that had been caused by the two draws, the position of the hackberry timber, connection with original N. E. 60, and with the river at north Cor. 72, the meanders of the river to S. E. 69, lead me to believe that the original position of the river and corner were further north, so we placed a rock mound for the N. E. 69, on the west bank of

the river, 410 varas N. 1° 30, E. from the rock mound marked 'N. W. 69' and N. 47° W. from the east side of the rocky bluff used as bearing by Mr. Williams, as more nearly satisfying the original description of this corner.

"From this point, as a check, we ran course and distance to the N. W. Cor. Sur. 69, and made mound, on west 2344 varas from the S. W. Cor. Sur. 70, and N. W. Cor. Runnels Co. No. 3, North to N. W. 70, west to S. W. 71, Thence to S. W. 72 and North to the river at 1910 varas we dropped some 20' into the river bottom covered with brush and some drift, on at 2204 reaching the south bank of the present river bed."

The corrected field notes of section 107; on which the patent issued, were prepared by A. N. Lea, county surveyor of Pecos county, in 1913, and read as follows:

"Beginning at a point in the west line of Survey No. 3, Runnels County School Land, 124.8 varas north of its southwest corner, a stake and mound for the northeast corner of this survey; Thence west 1275.42 varas to a point in the east line of Survey 39, Block 194 G. C. & S. F. Ry. Co. for the northwest corner this survey; Thence south with the east line said Survey 39, Block 194, at 814.8 varas the southeast corner said Survey 39—in all 1396.8 varas, to a point in the north line of Survey No. 37 said Block 194—515 varas east of its northwest corner for the southwest corner of this Survey; Thence east in the north line said Survey No. 37, 1275.4 varas to the southwest corner Survey 101, Block 194, G. C. & S. F. Ry. Co. for the Southeast corner this survey; Thence north at 1272 varas the northwest corner said survey 101; in all 1396.8 varas, to the place of beginning."

It can be seen from the map here included that the disputed territory is the tract marked "B" in the eastern portion of section 107. Appellant contending that the west line of the Runnels county school land is located where the heavy line is located, while appellee is claiming that the dotted line is the true location thereof. If the dotted line is the correct west line of the Runnels county school land, then "B" is in section 107, while, if as contended by appellant, the true location of the west line is as shown by the heavy line, then "B" would be included in section 101, a senior survey to 107.

As shown by the field notes of the Runnels county school lands, the proper location of the southwest corner of that tract depends upon the location of the southwest corner of survey 70, which, in turn, depends upon the correct location of the southeast corner of that survey.

It appears that in 1876 Kuechler made a survey of several of the river surveys, among which was survey No. 70, therefore it will be necessary in order to find the correct location of the southwest corner of said survey to first find the southeast corner and run course and distance west from said corner, there being nothing from which the southwest corner can be otherwise established.

Kuechler's field notes call for the southeast corner as being at a stone mound on the west bank of the Pecos river between two falls, from which a hackberry bears west 9 varas.

It now appears that the mound and the hackberry have disappeared, but according to Captain Dodd's report, made in connection with some of this work in this area, Mr. Williams' report shows that he found both the corner and hackberry in place in 1892 and took a new bearing on a rock bluff.

The testimony of all the surveyors who testified and the notes of Dodd all show that the meanderings of the river in the field notes of Kuechler show a sharp bend of the river at this corner, and they all concur in the fact that the point located by Dodd as the southeast corner of 70 is the only place along the river for miles where a bend corresponding to the one called for can be found.

The testimony further shows that at this point, and in fact all along this area, there has been but very little change in the meanderings of the river since 1876.

It further appears that on each side of the point located by Dodd are "ripples" or "riffles" which are probably the falls referred to by Kuechler.

A. N. Lea, a witness for appellee, testified to having located the south line and the southwest corner of survey 70 by running course and distance north from the southwest corner of survey 545, and says he found the mound marked "NW 69" referred to by Dodd in his report.

There is nothing in this record to show how or by whom that mound was placed, and it is not called for in the field notes of either survey 70 or survey 69.

The field notes of survey 69 calling for a stone mound on the west bank of the river between two falls, from which a hackberry bears west 9 varas.

Lea's testimony further shows that the line found by him by running course and distance was 400 varas south of the sharp bend in the river where the falls or ripples were located.

Bernard, a witness for appellant, placed the southeast corner of 70 at the same place same was placed by Dodd, from evidence he found on the ground, and principally from the fact that there is located at that point the only bend in the river that would any where near fit the angle called for in Kuechler's field notes, and for the further reason that at the point he found the remains of the falls in evidence.

Sylvan Sanders, a witness for appellee, testified:

"The original field notes called for that bend in the river and called for two riffles. The point described in the original field notes of Survey No. 70 and the bend there in the river indicates it is the same place. That is what I went there to find. Mr. Dodd thought that was the point described in the original field notes and I confirm him and think it is the point."

The only facts tending to fix the southeast corner and the south line of survey 70 different from where Dodd placed them is that a stone mound marked "N. W. 69" was found on the ground south of said point, and that Lea by running course and distance north from survey 545 also placed the line 400 varas south.

 As said before, the stone mound was not called for in the field notes of either survey 69 or 70, and therefore cannot be used in locating the survey. State v. Talkington (Tex. Civ. App.) 274 S. W. 314; Reast v. Donald, 84 Tex. 653, 19 S. W. 795; Hamilton v. Blackburn, 43 Tex. Civ. App. 153, 95 S. W. 1094; Ratliff v. Burleson, 7 Tex. Civ. App. 621, 25 S. W. 983, 26 S. W. 1003.

A location, such as made by Lea, made by running course and distance over four sections, cannot take precedence over a corner identified by natural objects on the ground, and especially would this be true when Lea admits that the sharp bend in the river called for in Kuechler's field notes and the indication of the falls as described in such field notes is 400 varas north of the point fixed by him.

We have, therefore, concluded that the evidence here establishes that Dodd used the southeast corner of 70 as called for by the Kuechler field notes, and that consequently the south line of 70 is located as shown by the heavy line on the map.

Lea admits in his testimony that the point located by him as the southwest corner of 70 is 400 varas south and 359 varas east of the point used by Dodd in running out the Runnels county school land.

The northwest corner of 101 being identical with the southwest corner of the Runnels county school land, then there will be a conflict between 101 and 107.

Surveyor Sanders, a witness for appellee, testified that in platting section 107 he found it to be 875 varas wide and 2159.8 varas long; that he found these distances by using a point 124.8 varas north of the southwest corner of the Runnels county school land, running west to the west line of 39 and then south to 37; and that it contained 334.7 varas. We find, however, that using his plat there will be included in section 107 the areas "C" and "A." Lea testified in correcting the field notes of 107 and 108 for the issuing of the patents, his purpose was to give an equal amount of acreage to each survey.

██ They are surveys of equal standing having been surveyed at the same time, consequently acreage cannot be taken from one and added to the other, the survey being an office survey. Welder v. Carroll, 29 Tex. 317. In that case the Supreme Court in discussing a case in which parties were disputing over the amount of land to which each was entitled, said:

"The external lines of the two surveys can, no doubt, be easily ascertained. Within these lines the different grants call for thirteen leagues of land. If there be an excess in the quantity of land within these lines, it is, nevertheless, appropriated and covered by the grants, and should be shared between them in proportion to the respective amounts to which they are mutually entitled. And, on the other hand, if there be not sufficient to satisfy both surveys, the diminution must be borne by them in the same proportion."

It thus appears that area "C" cannot be taken from 108 leaving it with a less amount of acreage than 107.

Sanders' plat also calls for the inclusion in 107 of area "A." At the time Lea made his survey of 107, survey 37 was not located on the ground, being an office survey. It has since been located at a point 294 varas south of where Lea thought it to be.

It thus appears that Lea was calling for an unmarked line at a point 294 varas north of where that line really existed, as afterwards run on the ground.

In such cases our courts have held that a course and distance call will control over the call for the unmarked line. Findlay v. State (Tex. Civ. App.) 238 S. W. 956; McCown v. Hill, 26 Tex. 359; Duff v. Moore, 68 Tex. 270, 4 S. W. 530; Gerald v. Freeman, 68 Tex. 203, 4 S. W. 256.

█ If we limit the north and south line to the distance called for by Lea, in his field notes, then area "A" could not be included. From a close study of the entire record there seems to be no doubt but what there exists a material shortage of the acreage in 107, and therefore appellant will be entitled to a rescission if it relied upon the representation as to the amount of acreage.

It seems clear from the record here that appellee thought he still owned 35½ acres of the lease he had originally acquired.

Without quoting the testimony, it appears that the transaction was entered into by the parties in the belief that at least 35½ acres were owned by appellee. Appellant made no independent investigation of the acreage, but depended upon the statement of appellee that he owned 35½ acres.

 Appellee testified that he told appellant's agents that he owned 35½ acres,

but is now depending upon the fact that appellant agreed to give him a letter containing the following provision:

"It is understood and agreed that for any defect of the fee title of the lessor you shall not be held responsible under the covenants and warranties recited in the assignment, and that on your covenants and warranties this company will hold you responsible only for defects in the title arising under the lease itself and resulting from your own acts and/or omissions," as relieving him from liability.

The most favorable construction of the above provision would do no more than relieve appellee of liability on his warranty of title. It appears to be well established that a general warranty of title does not warrant the quantity of land sold, and that the absence of warrany of title is not a defense to a suit for rescission based on fraud or mutual mistake as to quantity. Hart v. Daggett (Tex. Civ. App.) 6 S.W.(2d) 143; Brown v. Yoakum (Tex. Civ. App.) 170 S. W. 803.

Being of the opinion that appellee represented to appellant that he was the owner of an oil and gas lease consisting of 35½ acres, that appellant, relying upon such representation, paid to appellee the sum of $25,000, and that there is a material shortage in the amount of acreage attempted to be assigned, by reason of conflicts between survey 107 and senior surveys, we are of the opinion that the court should have granted the appellant's motion for an instructed verdict.

The judgment of the trial court is reversed, and judgment here rendered that appellant recover of and from appellee the sum of $25,000, with interest at 6 per cent. from December 23, 1927, together with rescission of the transaction.

Reversed and rendered.