**REVILLE v. POE et ux.**

No. 10050.

Court of Civil Appeals of Texas. Austin.

May 21, 1952.

Jackson, Blanks & Logan, by John D. Logan, San Angelo, for appellant.

Craig Porter, Upton, Upton, Baker & Griffis, by W. A. Griffis, Jr., San Angelo, for appellees.

ARCHER, Chief Justice.

This suit was instituted by G. M. Poe and wife as plaintiffs against A. G. Reville as defendant to recover $2,000 deposited by them under the terms of a contract of purchase and sale between I. D. Richardson and wife, as sellers and plaintiffs as purchasers, in which A. G. Reville was acting as agent for sellers in the transaction, in the District Court of Tom Green County, Texas.

Trial was had before the court without the aid of a jury and judgment was rendered for plaintiffs.

This appeal is before this Court on seven points assigned as error in the trial of the case. Point No. 1 is that the court erred in finding that plaintiffs did not breach the contract; Point No. 2 is that it was error for the court to find that Richardson failed to meet the requirements of title; Point No. 3 is that it was error to find that Richardson failed to furnish a marketable title, and the fourth point is that the court erred in finding that the defendant Reville is not entitled to the forfeit money deposited with him under the terms of the contract, or that defendant and his principals, the Richardsons, were not entitled to same, and in finding that plaintiffs are entitled to have the deposit returned to them.

Points Nos. six and seven are that the court erred in overruling defendant's exception to plaintiffs' petition that any agreement with regard to the furnishing of an easement for water was within the statute of frauds; and that the court erred in finding that the water supply in use by Richardson at the time of the execution of the contract of sale was the only means of obtaining water for the lands described in the contract.

The contract in part reads as follows:

"I. D. Pete Richardson & wife, hereinafter called Seller, acting through the undersigned and duly authorized Agent, hereby sells and agrees to convey unto G. M. Poe and wife, hereinafter called Purchaser, the following described property: Lying and situated in Tom Green County Texas further described as that certain 10 acres more or less located on the Ben Ficklin Road between the Leroy Clark and the Jack Hignett Homes, now occupied by Pete Richardson & wife and known as their home. This sale includes all land, mineral rights and improvements thereon. The purchase price is $21,500.00, payable as follows:

"$2,000.00 Cash (of which Purchaser has deposited with the undersigned Agent as part payment receipt of which is hereby acknowledged by said Agent): $19,500.00 being the balance to be paid in cash upon delivery of satisfactory abstract and title and possession of the above described property.

"Seller agrees to furnish clear abstract to said property, which shall be conveyed free and clear of any and all encumbrances except those named herein.

*     *     *     *     *     *

"If any title objections are made, then the Seller or his Agent shall have a reasonable time to cure said objections and show good and marketable title. In the event of failure to furnish good and marketable title, the purchase money hereby receipted for is to be returned to Purchaser upon the cancellation and return of this contract, or Purchaser may enforce specific performance of same.

"Seller agrees when the title objections have been cured, to deliver a good and sufficient General Warranty Deed properly conveying said property to Purchaser, and Purchaser agrees, when said deed is presented, to pay the balance of the cash payment and execute the note and Deed of Trust herein provided for. Should the Purchaser fail to consummate this contract as specified for any reason except title defects, Seller shall have the right to retain said cash deposits as liquidated damages for the breach

of this contract, and shall pay to Agent therefrom the sum of $half or Seller may enforce specific performance of this contract."

Attorneys for purchasers on examination of the abstract of title discovered that there was an easement from S. F. Hignett and wife to the Richardsons which recited that the grantors are the owners of an adjoining tract upon which there is a water well, and that in granting to the grantees an easement to lay a pipe line for usage in obtaining water, provided that "in the event of a sale of the ten acre tract by the grantees, then the grantors have the right to cancel the easement upon 90 days' notice."

A requirement was made that:

"Easement should be obtained from S. F. Hignett and wife, Edelle C. Hignett, to yourself, or I. D. Richardson and wife, Eula Jewell Richardson, should transfer the easement now held by them, and S. F. Hignett and wife should approve said transfer, and execute a written ratification agreement in connection therewith, stipulating that you are accepted as a transferee of the easement, and that they waive their right to cancel the same."

On December 19, 1950, plaintiffs' attorneys advised defendant's attorney that plaintiffs refused to go through with the contract of sale because the above quoted title requirement had not been met.

Subsequently the sellers tendered a deed to the property to purchasers but it was not accepted.

At the request of appellant the trial court made findings of fact and conclusions of law and in part read as follows:

"1.

"That on or about the 9th day of October, 1950, I. D. Richardson, who is also known as Pete Richardson, and his wife agreed to sell and convey to Plaintiff, G. M. Poe and wife, Ten (10) acres of land situated in Tom Green County, Texas, together with all improvements situated thereon, for a consideration of $21,500.00, to be paid in cash. That the seller, Pete Richardson, was represented in said sale by the defendant, A. G. Reville, with an agreement that he, the agent, would receive no commission in negotiating the same, as fully shown by the written contract.

*    *    *    *    *    *

"5.

"That the plaintiff, Poe, when he inspected said property, advised the Defendant, Reville, that he contemplated making it his home and feeding some cattle there.

"6.

"That the said Richardson remarked to Poe that there was plenty of water, and that the pressure was good, and that the water supply was obtained from a well with a pressure pump.

"7.

"That the seller, Richardson, furnished the abstract, and on examination it was determined that the said Pete Richardson did not own the water supply, he did not own the land that it was situated upon, and did not own the land that the pipe line from the well to the residence crossed, which was the only means of obtaining water upon said 10 acre tract of land.

"8.

"That the objection made by attorneys for the buyer, Poe, to the title for failure to shown ownership of the water supply was made in writing, within the time provided in the contract, and was communicated to the seller, Richardson, and his attorneys within the stipulated time. That such requirement was made in good faith, but was never met.

*    *    *    *    *    *

"9.

"That the only water rights that the said Pete Richardson had at the time of such contract was a permit from S. F. Hignett, permitting him to pipe water from the well to his premises, with the provision that this right would terminate at the well of the said S. F. Hignett, upon sale of said property.

"10.

"That at the time of the contract of sale, as aforesaid, the said Pete Richardson thought that he owned the water supply as well as the pipe line conveying said water to his premises, and in good faith intended to convey and thought he could convey the same.

"11.

"That the said Pete Richardson was unable to obtain permission of the said S. F. Hignett to transfer and assign said water rights, although he attempted to do so in an effort to furnish good title.

"12.

"That the contract of sale was prepared by the Defendant, A. G. Reville, he not being a licensed lawyer, and there was no provision, verbally or otherwise, that the Plaintiff, Poe, would purchase said property without water.

"13.

"That the seller, Pete Richardson, was present in Court and testified in behalf of the Defendant, but made no claim or demand for any part of said $2,000.00.

"14.

"That the said Pete Richardson in testifying made no claim that Poe had breached the contract, and admitted that he was unable to deliver the property as it existed at the date of the same.

"15.

"I find that the Plaintiff refused to purchase said property, on the ground that the said seller, Richardson, could not convey to him a good and clear title to all of said lands, together with all of the improvements that were then being used upon said premises.

"16.

"There is no testimony in the record that a marketable title was ever tendered to the Plaintiff, Poe, in accordance with the provisions of the contract of sale.

"17.

"That after the failure of the seller, Richardson, to furnish marketable title as it existed on the date of the contract within a reasonable length of time, the parties to the contract abandoned the same, and Richardson sold the property to another buyer.

"18.

"I find that in accordance with the contract, if the seller, Pete Richardson, was unable to comply with the terms and conditions of said contract, that the said $2,000.00 deposited with the Defendant was to be returned to the Plaintiff, G. M. Poe.

"19.

"That said Pete Richardson being unable to comply with the contract of sale, the Plaintiff, Poe, demanded of the Defendant, Reville, the return of said $2,000.00, but that he, the Defendant, without any legal excuse, retained and kept said deposit for his own use and benefit."

Conclusions of law:

"1.

"That the Plaintiffs, G. M. Poe and wife, did not breach the contract of sale between themselves and sellers, Richardson and wife.

"2.

"That the sellers failed to meet the bona fide title requirements of the purchasers' attorneys, and failed to furnish a marketable title.

"3.

"That the contract of sale embraced not only the bare lands but the improvements thereon, including the house, out-houses, fences, and water supply, as the same existed on the date the contract was executed.

"4.

"That the contract of sale has been terminated upon failure of the sellers to furnish marketable title.

"5.

That the said A. G. Reville, Defendant, is not entitled to the $2,000.00 deposited with him, and that the Plaintiffs, G. M. Poe and wife, are entitled to have the same returned to them.

"District Judge Presiding."

We believe that the findings of fact made by the court are reasonably supported by the record and that he correctly applied the law.

In Lindley v. Lindley, Tex.Civ.App., 201 S.W.2d 108, 111, writ ref., the Court said:

"When a case is tried to the court, as was this one, findings of fact by the court are equivalent to a jury verdict. The general rule is that such findings will support a judgment if there is any evidence of probative value to support them. Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824; Corn v. First Texas Joint Stock Land Bank, Tex.Civ.App., 131 S.W.2d 752, writ refused."

The Richardsons are not parties to the suit and are making no claim to the $2,000 deposited as earnest money or as part payment of the purchase price with Reville.

Reville, as defendant, is asserting in his answer the right accorded the seller in the contract which reads:

"* * * Seller shall have the right to retain said cash deposits as liquidated damages for the breach of this contract, and shall pay to Agent therefrom the sum of $half or Seller may enforce specific performance of this contract."

We do not believe that Reville acquired any right or title to the cash deposit or forfeit money until and unless the Richardsons successfully secured a judgment against the Poes for a forfeiture of the deposit and then only one-half thereof; and absent such successful assertion of a claim that Reville is not in a position to defend or maintain an action to retain the deposit, and in this connection the judgment of the court was a correct one.

The purchaser of the land under the contract is entitled to the property he sought to purchase and the contract embraced everything attached to the soil, including fixtures, etc. 43 Tex.Jur. p. 122; Hart v. Daggett (Tex.Civ.App., 6 S.W.2d 143, no writ.)

The parties to the contract believed that the indicated source of water supply could be transferred to the purchaser.

Mr. Richardson testified:

"Q. Now, at the time you entered into this contract with Mr. Poe, you didn't know that your water right there could not be transferred, did you? A. No.

"Q. Wasn't it your understanding at the time you entered into the contract with Mr. Poe that you would be able to transfer him that water right and easement, and so forth, so he would go ahead and have an uninterrupted water supply? A. Yes, sir.

"Q. And you were acting in perfectly good faith on that part? A. Yes, sir.

"Q. And then when the title was examined it was discovered that it had a clause in there that it could be terminated by Hignett; is that correct? A. Yes, sir.

"Q. And Hignett just wouldn't approve the transfer? A. Yes, sir."

Mr. Poe testified:

"Q. Did you have any discussion with Mr. Reville at that time with reference to the source of water supply?

"Mr. Logan: Object to that as constituting an attempt to vary the terms of a written agreement, and for the further reason the contract speaks for itself.

"The Court: You may have your bill.

"Mr. Logan: Exception.

"Q. Did you have such a conversation? A. Not with Reville, but with Mr. Richardson; we talked about the water.

"Q. I am talking about before you signed the contract of sale. A. Oh, yes; before when I made the contract I told them if—we done knew about the water—and I said if it—I said, 'I am not smart enough to examine the

papers but if I get somebody to examine them and if it is not all right I sure don't want the place.'

"Q. You were referring to the water? A. That is right.

"Q. You knew that he had shown you that there was a pipe line where your water came from? A. Yes.

"Q. Was that the only source of water supply that you saw out there or that was pointed out to you? A. As far as I know.

Q. No other source of supply was pointed out to you; is that correct? A. That is right.

\* \* \* \* \* \*

"Q. What was that conversation? A. Well, we went out that afternoon, and Jack Moreland, myself, and Mr. Richardson, we walked out the back, was a little barn out there; and it was brought up about the water while we were out there, and he showed me and pointed out the line and where the pump was and everything, but he says, 'Just one thing about it, you would never have to worry about no water because you'd sure have good water.'"

All of the assignments are overruled.

The judgment of the trial court is affirmed.

Affirmed.