STANOLIND OIL & GAS COMPANY ET AL. V. THE STATE OF TEXAS.

No. 7174. Decided February 3, 1937.
Rehearing overruled April 14, 1937; June 9, 1937.
(101 S. W., 2d Series, 801; 104 S. W., 2d Series, 1.)

548

*Turner, Rodgers & Winn,* of Dallas, *Clay Tallman* and *Donald Campbell,* both of Tulsa, Oklahoma, for Stanolind Oil & Gas

Co., *Robt. T. Neill,* of San Angelo, for J. A. Chapman and Sam K. Viersen, *J. B. Dibrell, Jr.,* of Coleman, *John and Jack Sayles,* of Abilene, for Permian Oil Co., *W. A. Keeling,* of Austin, *Francis H. DeGroat,* of Duluth, Minnesota, *Chas. A. Holden,* of Tulsa, *John M. Davenport,* of Kilgore, *Gibbs & Williams,* of San Angelo, for Douglas Oil Co., *Hiner & Pannill* of Fort Worth, for Peerless Oil Co. and certain individuals, *R. E. Seagler* and *Lee M. Sharrar,* both of Houston, and *John Perkins,* of Midland, for Humble Oil & Refining Co., *Thompson, Mitchell, Thompson & Young* and *Truman Post Young,* all of St. Louis, for Shell Petroleum Co., *R. C. Gwilliam,* of Tulsa, Oklahoma, for Marathon Oil Co., *Geo. T. Wilson,* of San Angelo, for I. G. Yates and the Yates Estate, *Smith & Smith,* of Fort Worth, for Southland Royalty Co., *Walter L. Kimmel,* of Tulsa, Oklahoma, for Hargrove Hudson, *Phillips, Trammell, Chizum, Estes & Edwards,* of Fort Worth, for Empire Gas & Fuel Co., *Vinson, Elkins, Sweeton & Weems, C. E. Bryson,* all of Houston, and *R. W. Adams, Jr.,* of Fort Worth, for Pure Oil Co., *Thompson, Knight, Baker & Harris,* of Dallas, for Simms Oil Co., and *D. B. Hardeman,* of San Angelo, for Cornell, all plaintiffs in error.

When the Court of Civil Appeals finds as a fact from the undisputed evidence that a block of surveys is made by the same surveyor on the same day as one piece of work, each of said surveys fronting on a stream and the southeast corner of a fixed survey on the river is plead and accepted by the plaintiff, State of Texas, at the north, and the Southeast corner of another survey is found by the Court of Civil Appeals as a matter of law and of fact to be established in its original position at the south, and intervening monuments and corners are not found, nor proven by the plaintiff, any excess found by the Court of Civil Appeals to exist upon the ground between said corners over that called for in the intervening surveys, must be prorated between the several surveys according to their respective widths called for in its original field notes. When the dividing lines between said surveys are found in this way, the eastern boundary of each being the river, the north and south lines and the western boundary of each is established as a matter of law by running the west distance called for from the river, then north the distance called for in the field notes and adding the proportion of excess as found belonging to such survey. Thus determined, the lines and corners of the survey are located for their own construction and for the purpose of determining whether or not junior surveys may be constructed by adjoinder. Welder v. Carroll, 29 Texas 318; Sellers v. Reed, 46 Texas 377; Luther v. Denny, 1 S. W. (2d) 6; Brooks v. Slaughter, 218 S. W. 632.

*William McCraw*, Attorney General, *H. Grady Chandler* and *Russell Rentfro*, Assistants Attorney General, of Austin, *Hart Johnson*, of Fort Stockton, *Mark McMahon*, *Gillis Johnson*, *Cantey, Hanger & McMahon* and *Warren Scarborough*, all of Fort Worth, *R. L. Ball, C. W. Trueheart* and *Ball, Seeligson & Trueheart*, all of San Antonio, for the State.

When unmarked lines for adjacent surveys are called for and when from the other calls of such adjacent surveys the position of such unmarked lines can be ascertained with accuracy, and when, in the absence of all evidence as to how the survey was actually made, there arises a controversy as to whether course and distance or the unmarked line of another survey shall prevail, the survey line called for should be given the dignity of an artificial object and prevail over course and distance. Maddox v. Fenner, 79 Texas 279, 15 S. W. 237; Camp v. Gulf Prod. Co., 122 Texas 383, 61 S. W. (2d) 773; Phillips Petroleum Co. v. State, 63 S. W. (2d) 737.

*Wagstaff, Harwell, Wagstaff & Douthit*, of Abilene, and *Collins, Jackson & Snodgrass*, of San Angelo, filed briefs as amici curiae.

MR. JUDGE HICKMAN of the Commission of Appeals delivered the opinion for the Court.

The case is well stated by Justice HIGGINS in the opinion prepared by him for the Court of Civil Appeals. 96 S. W. (2d) 297. In our statement some of his language will be adopted, but because of certain changes in arrangement and some omissions and additions here and there quotation marks will not be employed.

This is an action of trespass to try title and for damages brought by the State of Texas, seeking to recover a tract of land containing about 260 acres in the Yates oil field, Pecos County, and the value of oil taken from the land by the defendants. In the trial court upon an instructed verdict judgment was rendered for defendants. The issue is one of boundary. The State claims the land as unsold public free school land lying just north of Yates Survey 34½, while the defendants claim it as a part of T. C. Railway Company Surveys 101, 102, 103 and 104. In the alternative some of the defendants assert that, if it is not a part of those surveys, then it is embraced within Yates Survey 34½ mentioned in Holmes v. Yates, 122 Texas 428, 61 S. W. (2d) 771, and Miller v. Yates, 122 Texas 435, 61 S. W. (2d) 767. For an understanding of the location of the land in suit in connection with the surrounding surveys

reference is made to a map appearing in the opinion rendered in Turner v. Smith, 122 Texas 338, at page 355, 61 S. W. (2d) 792, at page 797. That map does not indicate any vacancy between the T. C. Railway Company surveys and the Yates Survey No. 34½. The following sketch, in connection with the map referred to, is deemed sufficient for an understanding of the questions here decided:

The sections bordering on the river form a part of I. & G. N. R. R. Co. Block No. 1. The land sued for is described in the petition as follows:

"All of that certain area comprising about 300 acres of land, bounded on the North by the South lines of Surveys 101, 102, 103 and 104, T. C. Ry. Co. Surveys, Block 194; and bounded on the East by a southward projection of the East line of Survey 104 to its intersection with the North line of Survey 34½; and bounded on the South by the most southerly North line of Survey 34½ (I. G. Yates), Block 194; and bounded on the West by a southward extension of the West line of said Survey 101, T. C. Ry. Co. Surveys, extending southward from its South West corner to intersect with the said most southerly North line of said Survey 34½, said area being further described by metes and bounds as follows:

"Beginning at a point on the ground, which is ascertained in the following manner: Begin at the S. E. corner of Survey 70, Block 1, I. & G. N. R. R. Co., an old mound of stone (in which a leaf from a car spring has recently been driven) on the West bank of the Pecos River, between two falls, or ripples, about 40 varas North Westerly from a bend in said bank, where two branches enter, one from the West and one from the South, the East edge or ledge of rock bears South 47 Deg. East about 600 varas, a stone marked 'N. W. 69,' in a mound of stone bears South, 1½ deg. East 408 varas, a pipe set in mound of stone bears 88 deg. West 12.6 varas; thence West 4112 varas to a point; thence South 6121 varas to the beginning point of this tract, being the area herein sued for, same being the true S. W. corner of Survey 101, Block 194, T. C. Ry. Co., as patented.

"Thence East with the South lines of Surveys 101, 102, 103 and 104, T. C. Ry. Co. Surveys 7600 varas to the South East corner of Survey 104, for the North East corner of this tract; thence South to a point in the North line of Survey 34½, which point is 215 varas south and about 250 varas West of a stone mound on a flat rock marked "SE 104 DOD Oct. 15, 1918'; thence West with the most southerly North line of said Survey 34½ for the South line of this area, to a point where the West line of said Survey 101 projected southward intersects with said North line of Survey 34½; thence north to the place of beginning."

During the course of the trial plaintiff filed a trial amendment alleging:

"In the alternative that if it be held that the southeast corner of Survey 70, Block 1, I. & G. N. R. R. Co. be located on the

ground at a point about 12 varas west from the old mound of stone in which a car spring has recently been driven, or at a point which is 50 varas west and 47.3 varas north from said old mound of stone in which a car spring has recently been driven, then the beginning point or northwest corner of the land here sued for should and may be ascertained by locating said beginning point at a point on the ground 4112 varas west and 6121 varas south from the point so held to be the southeast corner of said Survey 70. The description of the land sued for being otherwise identical with that set out in plaintiff's Fourth Amended Original Petition."

The mound of stone in which a car spring has recently been driven is referred to in the briefs as the car spring corner. The N. E. corner of Survey 69 in Block 1, I. & G. N. Railroad and the S. E. corner of Survey 70 in said block is a common corner. That block was surveyed in 1876 by Jacob Kuechler. The surveys therein are on the west bank of the Pecos River and will be herein sometimes referred to as the river surveys. All were located under certificates issued to said railroad company except Survey 545, which was located under a senior certificate issued to Torres Irrigation & Manufacturing Company. It was inserted in the block in lieu of Survey 66. Kuechler ran a traverse along the west bank of the Pecos River, monumenting and identifying the corners on the river by bearing calls for natural objects. He platted in by protraction the north, west and south lines of the surveys so as to give each survey 640 acres. The west lines uniformly call for 950 varas each. The field notes call for stakes and mounds at the west corners. Max Lungkwitz was the instrument man in Kuechler's surveying party and directed the actual work upon the ground. At the same time Kuechler surveyed another block for the I. & G. N. Railroad on the east bank of the river directly opposite Block 1. Field notes thereof were returned to the Land Office with plat showing the two blocks on the west and east banks of the river. The plat shows a series of 1280 acre rectangles bisected by the Pecos River.

Kuechler ran his traverse from the north to the south, but in preparing the field notes of the surveys in Block 1, he built one survey on the other northward, making common corners of the N. E. and S. E. corners on the river. Max Lungkwitz testified that he and Kuechler merely ran along the river bank and the latter did the computation on the other lines, which were never surveyed on the ground; that the stake and mound calls for the S. W. and N. W. corners of these surveys were fictitious or office calls.

Runnels County School Land Survey No. 3, hereinafter sometimes called Survey No. 3, was located by office survey made by L. W. Durrell, deputy county surveyor of Pecos County. His original notes called for the west line of the survey to be 5040 varas. They were filed in the land office March 19, 1881, but were not approved. This indorsement by the Land Office appears thereon: "Cancelled by corrected field notes—contains 26105580 sq. vs. Mch. 28/81."

These original notes read:

"Beginning at the South West Corner of Survey No. 70 made for the International & Gt. Northern Railroad Co. on Pecos River in said County. Thence East 2494 varas to the North West Corner of Survey No. 69 made for the same company.

"Thence South 950 varas to the South West Corner of said Survey 69. Thence East 1102 varas to the North West Corner of Survey No. 68 for same Company. Thence South 950 varas to the South West Corner of said Survey No. 68. Thence East 658 varas to the North West Corner of Survey No. 67 for same Company. Thence South 950 varas to the South West Corner of said survey No. 67. Thence East 1910 varas to the North West corner of survey No. 66 for said Company, Thence South 950 varas in the South West Corner of said survey No. 66 for a corner of this survey. Thence East 2177 varas to the North West corner of survey No. 65 for same company for a corner of this survey. Thence South 950 varas to the South West corner of said survey No. 65 for a corner of this survey. Thence East 298 varas to the North West corner of survey No. 64 for said Company. Thence South 290 varas to a pile of w. ch. in the East Line of survey No. 64 for South East Corner of this survey. Thence West 8637 varas to a rock mound for the South West corner of this survey. Thence North 5040 varas to the place of beginning."

On June 8, 1882, Durrell made corrected field notes for the survey. They were filed in the Land Office April 19, 1883, upon which patent issued February 25, 1887. The corrected field notes read:

"Beginning at a stake and mound at the S.W. corner of Survey No. 70 made in name of the International and Great Northern Railway Co. for the North West corner of this survey;

"Thence East 2494 varas to stake and mound N.W. corner Survey No. 69, I. & G. N. Ry. Co.;

"Thence South 950 varas to stake and mound for S.W. corner said survey No. 69; thence East 1102 varas to N.W. corner survey No. 68 I. & G. N. Ry. Co.;

"Thence South 950 varas to a stake and mound S.W. corner said survey No. 68;

"Thence East 656 varas to stake and mound N.W. corner Survey No. 67 I. & G. N. Ry. Co.;

"Thence South 950 varas to stake and mound S.W. corner said Survey No. 67;

"Thence East 1910 varas to stake and mound N.W. corner survey No. 66, I. & G. N. Ry. Co.;

"Thence South 950 varas to stake and mound S.W. corner said survey No. 66;

"Thence East 2177 varas to stake and mound N.W. corner survey No. 65, I. and G. N. Ry. Co.;

"Thence South 950 varas to stake and mound S.W. corner said survey No. 65;

"Thence East 298 varas to stake and mound;

"Thence South 162 varas to stake and mound for South East corner of this Survey;

"Thence West 8637 varas to a stake and mound for the South West corner of this survey;

"Thence North 4912 varas to the place of beginning."

Durrell testified that neither he nor anybody under him made any survey or investigation on the ground for the purpose of either set of field notes for Survey No. 3; when he made these field notes he did not have acquaintance with or information as to the location on the ground of any of the surveys for which these field notes called; the official field notes of surveys in Block 1 were the record information he had before him in drafting his field notes; all of his calls for stakes and mounds or piles of rock were fictitious calls; the calls in his field notes east and south from S. W. 65 were mere calculations to make Survey No. 3 embrace only one league and no more, and the reason why the 290-vara call at the S. E. corner of his original field notes was reduced to 162 varas in the corrected field notes was to reduce the quantity of land to one league; he had no information that the west lines of the river surveys might be any longer than 950 varas each; when he made his original and corrected field notes, he thought each of the west lines of the river surveys was 950 varas long, because that was what Kuechler's notes called for; a plat returned by the witness to the Land Office in 1884, in connection with his survey of Block 194, shows all he knew about the position of surveys in Block 1 at the time he made the field notes for R. C. S. L. No. 3, as well as at the time he made the field notes of Block 194. This plat, as well as the little sketch in the upper right-hand corner of Durrell's corrected field notes, pictures the east line of Run-

nels County School Land in coincidence with the west lines of the river surveys.

Beginning in the spring of 1917 and continuing through 1920, R. S. Dod, State Surveyor, did a great deal of surveying in this vicinity. The opinion of this Court in Turner v. Smith, supra, and that of the Court of Civil Appeals in the same case reflect in part the scope of Dod's work. He was unable to identify any of the original Kuechler corners of the river surveys between the S. E. corner of 70 and the S. E. corner of 61. Between the corners mentioned he found an excess of 387 varas. He reported his findings to the Land Office and, under the instructions of the Land Commissioner, gave to each of the nine sections between these established corners an excess of 43 varas north and south, making the west line of each 993 varas instead of 950 varas, and established and monumented the west corners of the river surveys in accordance with that plan. Under the instructions of the Commissioner, he also gave the same proportionate distance excess to the east and west boundary lines of Survey 3, conforming the east lines thereof to its adjoinder calls for the west corners of the river surveys. This excess, plus the other distance calls, gave the east and west lines of Survey 3 a north and south distance of 5127 varas. On January 17, 1920, Dod returned to the Land Office corrected field notes for Survey 3 as so constructed.

The State, by disregarding the calls for adjoinder in the Durrell field notes of Survey 3 and giving controlling effect to the calls for distance to the various corners of the river surveys between Surveys 70 and 64, would reduce the distance between the north and south lines of Survey 3 by 215 varas below that reflected by the above sketch; construct the T. C. Ry. Co. Surveys 101, 102, 103 and 104, from the south line of Survey 3 thus established; detach them from Survey 34½, and have the intervening strip decreed to be unsold public school land. It thus appears that, while the land in suit is a claimed vacancy between the T. C. Ry. survey and the Yates Survey No. 34½, the question turns upon the location of Survey 3, Runnels County School Land, which itself is dependent upon the true location of that group of the river surveys between the south line of Survey 65 and the south line of Survey 70.

We, therefore, consider first the question of the actual location of the west corners and lines of River Surveys 65 to 69, inclusive. The Kuechler original S. E. corner of Survey 61 and N. E. corner of Survey 60, a common corner, is well established. The Court of Civil Appeals so holds, and we expressly approve the holding. In its petition the State alleged that the S. E. corner

of Survey 70 is located at the car spring corner. Its case rests upon the fact that it is an established original corner. Upon the trial some evidence was offered tending to place its location a few varas distant from the car spring, whereupon the State filed a trial-amendment adopting that point in the alternative, as the true location. This slight variation, in the light of the pleading, does not render uncertain the true location of this corner. It is at the car spring or so near thereto that the variation is negligible. For all practical purposes it is made to appear by this record that the S. E. corner of 70 is definitely fixed upon the ground.

The evidence is insufficient to present an issue of fact as to the location on the ground of the corners of the intervening surveys. The undisputed evidence establishes that there is an excess in distance north and south over Kuechler's calls between the car spring corner and the S. E. corner of Survey 61.

We are in full agreement with this language in the opinion of the Court of Civil Appeals:

"We also unconditionally hold that Block 1 is a system of connected surveys made by the same surveyor at the same time, the surveys being built one upon the other from the south to the north. In such situations the courts have adopted the rule of prorating the excess between the several intervening surveys. Turner v. Smith, supra, and cases there cited.
"The facts render such rule applicable to this case."

Kuechler intended to appropriate all of the land between the S. E. corner of Survey 61 and the S. E. corner of Survey 70. This intention is clearly reflected both by his original field notes and his original plat. It is true, as stated by the Court of Civil Appeals, that his error may have occurred between S. E. 65 and S. E. 61. It may be true, as insisted by the State, that the excess in distance was the result of some isolated mistakes. In its brief filed in this Court this language is found:

" * * * Whether these isolated mistakes in southing occurred between 70 and 65 or between 65 and 61 is not shown. It is, therefore, impossible to ascertain with any accuracy where the back lines of the river surveys will fall."

1 The very fact that it is not known where or how the mistakes were made makes applicable the rule of prorating the excess between the different surveys. Since there is no showing that the variance arose from a defective survey of any part, it must be concluded that it arose from a defective survey of the whole line. The rule is an equitable one and prescribes the only

logical and reasonable method of meeting a situation like that here presented. The testimony of Lungkwitz that he checked the chainmen and that the measurements were accurately taken and recorded was not confined to the block of surveys between 70 and 65. That testimony was given as to all of the tier of surveys,· and applied to those between 65 and 60 the same as to those between 64 and 70. It amounted to no more than a statement that there is no excess at all, which is contrary to the very theory upon which this suit was instituted. But for such excess this case would not be here. We conclude that Dod, in his resurvey under instructions of the Land Commissioner, properly prorated the excess by giving to the back line of each of these river surveys a length of 993 varas instead of 950 varas. Welder v. Carroll, 29 Texas 517; Sellers v. Reed, 46 Texas 377; Ware v. McQuinn, 7 Texas Civ. App. 107, 26 S. W. 126; Knippa v. Umlang, 27 S. W. 915; Austin v. Espuela Land, etc., Co., 107 S. W. 1138; Johnson v. Knippa, 127 ·S. W. 905; Stahlman v. Riordan, 227 S. W. 726; Standifer v. Vaughan, 219 S. W. 484; Pandem Oil Co. v. Goodrich, 29 S. W. (2d) 877; Turner v. Smith, supra.

2   The next question for decision is whether Runnels County School Land Survey No. 3 should be constructed by adjoinder to the river surveys for which the field notes of its patent call. The State insists that, since it is ·an office survey, and since Durrell was mistaken as to the true locations of the several unmarked corners of the river surveys called for in its field notes, the calls for adjoinder should be disregarded and the calls for distance control. The general rule is that a call for adjoinder is given controlling effect over a call for course and distance. If, however, the call for adjoinder is made through mistake, the general rule is not applicable. But, though a call for adjoinder be made through a mistaken belief as to its true location, it does not always follow that the course and distance call will control. The mistake does not reverse the rule, but rather sets the matter at large so that the court is left free to construct the survey in such manner as will best give effect to the intention to be determined from the entire description. "When the line or corner of another survey is called for in field notes made without an actual survey, such line or corner, if evidently called for by mistake, may be disregarded, when to observe them would be inconsistent with all the other calls which upon the ground are found, inconsistent with the course and distance called for, and with the manifest intention of the parties to be arrived at by a consideration of all the calls in the grant and the facts which surrounded the parties and to which they looked

at the time the grant was made." Boon v. Hunter, 62 Texas 582.

To the same effect is the following language in State v. Sullivan, 127 Texas 525, 92 S. W. (2d) 228:

" * * * In such situation the call for adjoinder will be rejected, as inserted by mistake, and controlling effect given to course and distance from known and undisputed corners, when under the facts of the particular case such construction of the survey is 'most consistent with the intention to be derived from the entire description.' This method of construction by the rejection of a call for adjoinder inserted by mistake is most consistent with the true intention if its effect is to harmonize the other terms of the field notes and to disregard as few of the calls as possible. See Wilson v. Giraud, 111 Texas 253, 264, 231 S. W. 1074, 1078; Porter v. State, (Tex. Civ. App.) 15 S. W. (2d) 191, 193; Finberg v. Gilbert, 104 Texas 539, 547, 141 S. W. 82; Gerald v. Freeman, 68 Texas 201, 204, 4 S. W. 256; State v. Talkington, (Tex. Civ. App.) 274 S. W. 314; Cox v. Finks, (Tex. Civ. App.) 41 S. W. 95, 99; Gilbert v. Finberg, (Tex. Civ. App.) 156 S. W. 507; Lafferty v. Stevenson, (Tex. Civ. App.) 135 S. W. 216, 220; Lomax v. Rowe, (Tex. Civ. App.) 3 S. W. (2d) 498."

3   To demonstrate the impracticability, if not the impossibility, of giving controlling effect to the several calls for distance constituting the east boundary of Survey 3, we need only refer to Durrell's field notes and the map above inserted. These field notes, after locating the northeast corner of Survey 3 at the northwest corner of River Survey No. 69, then by a series of calls proceed south and east. The back lines of the river surveys are uniformly 993 varas. The length of each south call in Durrell's field notes of Survey 3 is 950 varas. If those calls are not held to extend to the southwest corners of the respective river surveys then the east calls will fall within the area of those senior surveys; and, if given any effect at all, the result will be an overlapping of acreage between a junior and a senior survey. But, as said in Kirby Lumber Co. v. Gibbs Brothers & Company, 14 S. W. (2d) 1013, at page 1014:

" * * * There can be no possible overlapping of acreage where the junior survey expressly calls to begin at the senior."

The opinion of this Court in Turner v. Smith, supra, is cited many times in the briefs. There was a dissenting opinion filed in that case, but upon the particular question there decided which controls the instant case, there was no dissent, and we are in complete harmony with respect thereto. There was in-

volved in that case the question of the proper method of constructing the surveys of Block 194, an office survey. In the field notes for Block 194 the western lines and corners of the western tier of sections were tied to the eastern lines and corners of the eastern tier of sections in Block Z. At the time Durrell returned his field notes for Block 194, he had no knowledge of any monuments on the ground in Block Z, and had the right to assume that its sections were laid off according to their distance calls. It later developed that there was an excess in distance between the north and south lines of Block Z. No original corners were found in that block, except one on its north line and one at its southeast corner. The field notes in Block Z call for the surveys composing same to be 1900 varas north, south, east and west. Like distance calls were made for the surveys in Block 194. The field notes of the western tier of surveys in Block 194 call for the adjacent corners in Block Z. In deciding the question thus presented this Court wrote:

"From the above it appears that in locating Block 194 under Durrell's survey and field notes it is to be constructed from the east line of Block Z eastward by course and distance. Since Block Z was a survey on the ground and there is found to be an excess over its course and distance calls between the north and south lines as fixed by original monuments on the ground, this excess was properly prorated among the several tiers of sections within Block Z.
" *    *    *

"And this same excess north and south must be brought eastward into Block 194, because the western tier of sections in Block 194 call to adjoin with the lines and corners of the eastern tier of sections in Block Z. * * *."

In that case the east line of Block Z was an unbroken straight line, while in the instant case the west line of the river surveys (regarding them as one block) is in the shape of stair-steps, rendering it much more imperative that controlling effect be given to calls for adjoinder here than in the case of Turner v. Smith.

The fact that this method of constructing Survey 3 results in giving some excess (less than five per cent.) in distance between its north and south lines, does not balance the considerations which call for a construction by giving effect to the calls for adjoinder.

By reference to Durrell's corrected field notes under which the patent to Runnels County School Land was issued, copied above in this opinion, it will be observed that, after the call

for the S. W. corner of Survey No. 65, follow these calls: "Thence E. 298 vrs. to stake and mound; thence S. 162 vrs. to stake and mound for S.E. corner of this survey." It is argued that, since the dominant intention was to include one league of land and no more in the grant, that intention should be given effect in part by omitting the two calls above quoted and running the south line west from the S. W. corner of Survey 65. By doing so a vacancy less in area than that sued for would be established. We are in effect called upon to reconstruct the survey by rewriting the field notes and determine, not what land was included therein, but what should have been included therein. We have no authority to omit these calls from the field notes. This is not a suit to reform. The land granted by this patent is that included within the boundaries fixed according to the field notes, and not merely the acreage called for, and our sole inquiry is directed to the survey as made by the surveyor. Blackwell v. Coleman County, 94 Texas 216, 59 S. W. 530; Forbes v. Withers, 71 Texas 302, 9 S. W. 154; Weatherly v. Jackson, 123 Texas 213, 71 S. W. (2d) 259; Blake v. The Pure Oil Co., 128 Texas 536, 100 S. W. (2d) 1009.

The trial court properly instructed a verdict in favor of the defendants. It is accordingly our order that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

Opinion adopted by the Supreme Court February 3, 1937.

ON REHEARING.

In our original opinion this language appears:

" * * * In its petition the State alleged that the southeast corner of Survey 70 is located at the car spring corner. Its case rests upon the fact that it is an established original corner. Upon the trial some evidence was offered tending to place its location a few yards distant from the car spring, whereupon the State filed a trial amendment adopting that point in the alternaive, as the true location. * * *."

5 The State is not entitled to so liberal an interpretation of its trial amendment. That pleading is expressed in this language:

"In the alternative that if it be held that the southeast corner of Survey 70, Block 1, I. & G. N. R. R. Co. be located on the ground at a point about 12 varas west from the old mound of stone in which a car spring has recently been driven, or at a

point which is 50 varas west and 47.3 varas. north from said old mound of stone in which a car spring has recently been driven, then the beginning point or northwest corner of the land here sued for should and may be ascertained by locating said beginning point at a point on the ground 4112 varas west and 6121 varas south from the point so held to be the southeast corner of said Survey 70. The description of the land sued for being otherwise identical with that set out in plaintiff's Fourth Amended Original Petition."

An analysis of that language shows that the State does not allege in the alternative that the southeast corner of Survey 70 is at any other point than the car spring corner. The alternative therein mentioned is one of locating the land sued for in the event it be held (contrary to the State's contention) that the car spring corner is not the true corner. The State by its pleading is definitely committed to the proposition that the car spring corner is the true corner. In its brief filed in the Court of Civil Appeals it devotes considerable space to a discussion of a proposition expressed by it in this language: "S. E. 70 is definitely located on the ground at the car spring corner as a matter of law."

With such a pleading in the record and such a proposition in its brief the State can not be heard to say that the trial court erred in its failure to submit to the jury the issue of the true location of that corner.

We agree with the contention that an issue of fact was presented as to the exact distance north and south between the south line of Survey 70 and the south line of Survey 61, but, taking the distance as the shortest one testified to by any witness, the most favorable construction from the State's viewpoint, and prorating the excess thus resulting between the intervening surveys, no vacancy exists between the south line of the T. C. Railway Co. surveys and the most southerly north line of the Yates Survey No. 34½. We reannounce this conclusion after a most careful consideration of the interesting theories advanced in the motion for rehearing in the light of the evidence bearing thereon.

In view of the contentions on rehearing we make the observation that our opinion is not to be construed as a fact finding as to the location on the ground of the S. E. corner of Survey 70. That issue was not submitted to the jury in the trial court and the evidence is conflicting with reference thereto. We simply hold that the State can not complain in this proceeding of our action in deciding this case on the basis that the car

spring corner is the true one, in view of its pleadings and contentions in the lower courts.

Certain individuals have filed, by permission of the Court, a brief, as friends of the Court, which evidences that they are apprehensive lest the sketch inserted in our original opinion be construed as a finding of fact in other litigation now pending. It would seem that a vacancy has been decreed, or that it is sought to have one decreed, between the eastern boundary line of T. C. Railway Company Survey No. 104 and the most northerly west boundary line of Yates Survey No. 34½. The sketch inserted in our opinion shows an adjoinder of those surveys. Of course, the decision in this case should not be construed as a determination in favor of or against the existence of such a vacancy. That question was not before us for decision. The sketch used in our opinion was not an official map and did not purport to be. We referred to it in our opinion as a sketch. It was taken from one of the numerous briefs filed in this case, and was inserted because it depicted more clearly than other maps the conflicts which would result from a construction of Runnels County School Land Survey No. 3 in accordance with the opinion of the Honorable Court of Civil Appeals. We did not, and do not now, vouch for the accuracy of that sketch.

We further observe that our opinion is not to be construed as a determination against plaintiffs in error of the question of judicial estoppel urged by them in their several applications for writs of error. Because of our holdings on the questions discussed we did not, and do not now, pass upon that question.

The case has been carefully reconsidered on rehearing, but we are firmly convinced that no error was committed by the trial court and the motion for rehearing is accordingly overruled.

Opinion adopted by the Supreme Court April 14, 1937.

Second rehearing overruled June 9, 1937.