**STATE et al. v. YATES et al.**

No. 9204.

Court of Civil Appeals of Texas. Austin.

May 13, 1942.

Rehearing Denied June 3, 1942.

Gerald C. Mann, Atty. Gen., and Glenn R. Lewis, Will R. Wilson, Jr., and James Noel, Asst. Attys. Gen., for the State, appellant.

H. Grady Chandler, of Austin, and Wagstaff, Harwell, Douthit & Alvis, of Abilene, for cross-plaintiff, B. B. Burk.

Smith & Smith and Myron A. Smith, all of Ft. Worth, for appellee Peerless Oil & Gas Co. and others.

Henry H. Brooks, of Austin, for appellee Cardinal Oil Co.

H. L. Stone, of San Angelo, John E. Green, Jr., of Houston, and P. O. Settle, Wm. L. Wise, W. E. Allen, all of Ft. Worth, for appellee Gulf Oil Corporation.

Palmer Bradley, of Houston, for appellee General Crude Oil Co.

Wilson & Durham and Geo. T. Wilson, all of San Angelo, for appellee I. G. Yates' estate.

Nathan Scarritt, of Enid, Okl., and Ira Butler, Cantey, Hanger, McMahon, McKnight & Johnson, Warren Scarbrough, and Gillis A. Johnson, all of Ft. Worth, for appellee Champlin Refining Co.

R. E. Seagler and Wm. Pannill, both of Houston, for appellee Humble Oil & Refining Co. and another.

Turner, Rodgers & Winn, Carlton R. Winn, and George S. Terry, all of Dallas (Donald Campbell and L. A. Thompson, both of Tulsa, Okl., of counsel), for Stanolind Oil & Gas Co.

BAUGH, Justice.

Suit by the State, in trespass to try title to recover as vacant school lands a strip of land between the south line of Runnels County School Survey No. 3, hereinafter designated as Sur. No. 3, and the north lines of T. C. Ry. Co. Surveys 101, 102, 103 and 104, in Pecos County, Texas. The first two counts asserted alternate locations of the S. E. Corner of I. & G. N. Sur. No. 70 as the beginning point for locating the asserted vacancy. The third count was for reformation of the patent to Sur. No. 3, so as to reduce the acreage to one league; and the fourth to recover an undivided interest in Sur. No. 3 to the extent of the excess acreage over and above one league. One B. B. Burk, to whom the Land Commissioner had awarded an oil and gas lease on the alleged vacancy, was made a party defendant, and by cross-action joined the

State as coplaintiff. The trial court sustained a general demurrer to the State's petition and dismissed the suit; hence this appeal. It was agreed by all parties that the trial court, in passing upon the demurrer, could consider the opinions and judgment of the Supreme Court in State v. Stanolind Oil & Gas Co., 129 Tex. 547, 101 S.W.2d 801, 104 S.W.2d 1; Stanolind Oil & Gas Co. v. State, Tex.Civ.App., 133 S.W.2d 767, and Id., Tex.Civ.App., 145 S.W.2d 569.

Since the discovery of oil in the area involved, the proper location of various surveys has been a fruitful source of litigation. It is unnecessary to cite the numerous cases here. Without here inserting maps showing the relative location of the various surveys, reference is made to maps in Pandem Oil Corp. v. Goodrich, Tex.Civ.App., 29 S.W.2d 877, 879; Turner v. Smith, 122 Tex. 338, 61 S.W.2d 792, 797; Stanolind Oil & Gas Co. v. State, 129 Tex. 547, 101 S.W.2d 801, 803, 104 S.W.2d 1.

It is not controverted that the Runnels County School land Sur. No. 3, was an office survey calling for adjoinder to the west and south lines of the I. & G. N. river surveys 70 to 64; and that the T. C. Ry. Co. surveys 101 to 104 likewise were office surveys. Sur. 101 calls to begin at the S. W. corner of Sur. No. 3, and to run eastward. The other T. C. Ry. surveys call only for adjoinder to each other. The I. G. Yates Sur. No. 34½ calls for adjoinder to T. C. Ry. Co. Surs. 101 to 104, and for one of its north lines to coincide with the south lines of the T. C. Ry. Co. surveys. All of these matters are disclosed in the opinions of the Court of Civil Appeals in State v. Stanolind Oil & Gas Co., 96 S.W.2d 297, and of the Supreme Court in Stanolind Oil & Gas Co. v. State, 129 Tex. 547, 101 S.W.2d 801, 104 S.W.2d 1.

In what is designated as the first Stanolind case, next above referred to, the State sought to establish a vacancy between the Yates Sur. 34½ and the T. C. Ry. Co. surveys, predicated upon the car spring corner, as the true S. E. corner of Sur. 70, or if that were not the true corner, then upon another point north and west of the car spring corner, as a beginning point to locate the S. W. corner of Sur. No. 3 and the south lines of the T. C. Ry. Co. surveys. This would necessitate pulling the Yates Sur. 34½ away from its called for adjoinder to the T. C. Ry. Co. surveys, and for disregarding the calls for the S.E. corner

of No. 3 to be 162 vrs. south and 298 vrs. east of the S. W. corner of Sur. No. 65. This the Supreme Court expressly refused to do, held that the State was estopped to assert that the true S. E. corner of 70 was located other than at the car spring corner, though declining to determine what was the true original S. E. corner of Sur. 70 (104 S.W.2d page 2); that Sur. No. 3 must be located by its adjoinder calls for the west lines of the I. & G. N. river surveys, including the prorated excess of 43 vrs. allotted to each of said surveys; that the existence vel non of the asserted vacancy in that case "turns upon the location of Survey 3, Runnels County School Land, which itself is dependent upon the true location of that group of the river surveys between the south line of survey 65 and the south line of survey 70"; that regardless of such location Sur. No. 3 could not be separated from the river surveys to which it called to adjoin, nor could 34½ be detached from the T. C. Ry. Co. surveys to which it called to adjoin; and that such calls for adjoinder must control over calls for course and distance.

After that adjudication the State in this suit then alleged a different location than the car spring corner for the S. E. corner of 70, farther north and west, as a beginning point by which to locate Sur. No. 3, and sought to establish such vacancy between the south line of Sur. No. 3, and the north lines of T. C. Ry. Co. surveys, ignoring the call for the S. W. corner of No. 3, as the beginning N. W. corner of Sur. No. 101, and predicated upon course and distance calls from the north line of No. 3, as coincident with the newly located south line of Sur. 70.

As against such method, and as sustaining the trial court's judgment, appellees urge that the State is estopped by the decision of the Supreme Court in the Stanolind case; that that case is res adjudicata of the claimed vacancy; or, if not, then that the decision of the Supreme Court, affirming the judgment of the trial court, is stare decisis of the issue here presented.

■ While we are inclined to the view that the Stanolind case was an adjudication that no vacancy existed anywhere between Sur. No. 3 and the Yates Sur. 34½ as far east as the east line of T. C. Ry. Co. Sur. 104; we think that case is conclusive upon the State under the now settled rule of stare decisis. We refer to the opinion in

101 S.W.2d 801, without extensive discussion of the State's contentions in the instant case. A careful consideration of that opinion in the light of the facts above stated leads inescapably to the conclusion that the Supreme Court there determined that course and distance from Sur. 70, were not controlling; but that Sur. No. 3 must be located by adjoinder to the river surveys and include the same excess distances over the calls in its field notes that were allocated to the river surveys; that the Yates Sur. 34½ must be adjoined, as its field notes called for, to the south lines of the T. C. Ry. Co. Surs. 101 to 104; and that these surveys in turn adjoin, as their beginning point called for, the south line of, and their north line is coincident with, the south line of Sur. No. 3. That being true, that decision is necessarily conclusive of the State's contention here. The State was plaintiff in both suits, the same surveys and the same boundary lines between them were involved, and many of the parties defendant in both suits were the same. Clearly the State is bound by that adjudication which it affirmatively sought. Consequently, the doctrine of stare decisis laid down in Porter v. State, Tex.Civ.App., 15 S.W.2d 191, writ refused; Blaffer v. State, Tex. Civ.App., 31 S.W.2d 172, writ refused; and Federal Royalty Co. v. State, 128 Tex. 324, 98 S.W.2d 993, 996, applies. See, also, 26 Tex. Jur., § 368, p. 46.

It may also be observed that the original field notes for the T. C. Ry. Co. surveys called for north-south width of 1,900 varas and were intended to include all vacant unappropriated lands between Sur. 3 on the north and Block 194 on the south. The Land Commissioner concluded however that such distance caused same to overlap on Block 194, corrected same by reducing the north-south width of these surveys to 1,209 varas, and patents were issued on the corrected field notes. It was then discovered that the distance between Sur. No. 3 and Block 194 was in excess of 1,209 varas, and the Yates Sur. 34½ was located to cover this excess. See Miller v. Yates and Holmes v. Yates, 122 Tex. 435 and 428, 61 S.W.2d 767 and 771. While those suits were between private parties and not binding upon the State, they do demonstrate a continuous and consistent recognition by the Land Commissioner that the T. C. Ry. Co. surveys were intended to, and did, adjoin Sur. No. 3, that whatever vacancy might exist must be located south of the T.

C. Ry. Co. surveys, and the location of Yates 34½ clearly so shows.

Nor is this case controlled by Horne v. Moody, Tex.Civ.App., 146 S.W.2d 505. That case does not in any manner modify the now settled rule of stare decisis; and is clearly distinguishable from the Stanolind case applicable here. We refer to the map shown on page 507 of 146 S.W.2d as showing the lands there involved. A careful examination of the opinion of the Court of Civil Appeals in 204 S.W. 792, and of the Supreme Court in 254 S.W. 783, in Allen v. Draper, relied upon in Horne v. Moody as stare decisis of the issues presented in the latter case will readily disclose such distinction. While it was urged in Horne v. Moody that Allen v. Draper had located the west and north lines of the Viboritas grant (See map 146 S.W.2d page 507) and the N. W. corner of that grant as coincident with the N. E. corner of Sur. 162, the opinions above referred to in Allen v. Draper disclose that two issues were there adjudicated,—first, in conflicts between two surveys of public lands made at different times, which survey prevailed in the overlapping area; and, second, whether an award of public lands, not yet patented, and occupation thereunder, could be urged to sustain a title or prior right under the three-year statute of limitation. No mention is made of the Viboritas grant, no adjudication of its location in any manner, and no issue of vacancy, if any, resulting from a proper location thereof, were in any way considered in Allen v. Draper. Nor was the State a party to either suit. Allen v. Draper involved only a conflict between Sur. 162, on the one hand, and Surs. 207 and 208, on the other. There is nothing in the opinion either of the Court of Civil Appeals or of the Supreme Court to indicate that the location of the lines of the Viboritas grant was involved and no rule or method of location thereof laid down whereby such question could be said to have been considered or adjudicated. In Horne v. Moody different parties, different surveys and different issues were involved from those involved in Allen v. Draper; and the proper location of the surveys involved in Horne v. Moody was expressly dependent upon the true location of the lines of the Viboritas grant, a matter not adjudicated either as to location or method of location, in Allen v. Draper. Whereas in the instant case and in the Stanolind case, the State was plain-

tiff in both suits, many of the same parties were defendants in both, the same surveys were involved and the proper location of Sur. No. 3 and the T. C. Ry. Co. surveys are involved in both. The rule laid down in the Stanolind case for the location of these surveys consequently becomes binding as a matter of law, under the doctrine of stare decisis, on the State in the instant case. And as we interpret the decision in that case it necessarily held that the T. C. Ry. Co. surveys adjoined the Runnels County School Land Sur. No. 3, and precluded the State from thereafter disjoining these surveys and establishing a vacancy between them. Under the facts and circumstances above stated, it is clear that the issues presented in Horne v. Moody and those presented here are not analogous.

■ Appellants' third count for reformation of the patent so as to limit the acreage in Sur. No. 3 to one league and no more is predicated upon a reversal of the calls in the patent by beginning on the south line of Sur. 70, running south the called distance for the west line of Sur. No. 3 for its S. W. corner, thence east to the west line of the river surveys. This method of location would place the south line of Sur. No. 3 215 vrs. north of its location if run westward from the point called for in its field notes for the S. E. corner of Sur. 3, that is, 162 vrs. south of the south line of Sur. 65, would disregard the calls for adjoinder for the river surveys and the allocation to those surveys, in establishing them on the ground, of the 43 varas each by Dodd and approved by the Supreme Court in the Stanolind case. The same contention, but for purposes of establishing a vacancy between Sur. No. 3 and Block 194, was made in the Stanolind case. In that case the Supreme Court expressly declined to locate the south line of Sur. No. 3 elsewhere than called for in its field notes, that is, at a point 298 vrs. east and 162 vrs. south of the S. W. corner of 65.

Hence we think this question was definitely adjudicated and concluded against the State in the Stanolind case, 101 S.W.2d page 808, syl. 6.

■ The fourth count was for recovery by the State of an undivided interest in Sur. No. 3 to the extent of the excess acreage over one league. Appellants urge that the title to the excess in such survey is still in the State, citing particularly the Capital Syndicate case (Findlay v. State, Tex.Civ.App., 238 S.W. 956; Id., Tex. Civ.App., 239 S.W. 996; Id., 113 Tex. 30, 250 S.W. 651); Anderson v. Robison, 111 Tex. 402, 229 S.W. 459; and Willoughby v. Long, 96 Tex. 194, 71 S.W. 545. Without prolonging this opinion by discussing and distinguishing those cases here (which we think are clearly distinguishable from the instant case), we agree with appellees' contention that this question is conclusively ruled by Steward v. Coleman County, 95 Tex. 446, 67 S.W. 1016; Lewright v. Travis County, 54 Tex. Civ.App. 540, 118 S.W. 725, approved by the Supreme Court as stare decisis of the question in Cross v. Wilkinson, 111 Tex. 311, 234 S.W. 68, 69, wherein it is held that the Act of March 21, 1883, p. 28, afterwards Art. 4269, R.S.1895, vested titles "to the land included within the lines of said surveys, as returned to the general land office" in the counties for which same were made. The field notes for Sur. No. 3 having called for the lines of the river surveys, though the surveyor was mistaken as to the north-south width of those surveys; and the Supreme Court in the Stanolind case having fixed, under such field note calls, the location of the south line of Sur. No. 3, it follows, under the cases above cited, that by express legislative act title to the lands "included within the lines of said surveys," even though in excess of the acreage called for in the patent, is vested in the county and the State had no further claim thereto.

The judgment of the trial court is therefore affirmed.