GLASSCOCK et al. v. PERMIAN OIL CO. et al.

No. 4405.

Court of Civil Appeals of Texas. El Paso.

Nov. 16, 1944.

Rehearing Denied Dec. 7, 1944.

Grover Sellers, Atty. Gen., Thomas B. Duggan, Jr., and Jack W. Rowland, Asst. Attys. Gen., and Wagstaff, Harwell, Douthit & Alvis, of Abilene, for appellants.

Turner, Rodgers & Winn, Carlton R. Winn, and George S. Terry, all of Dallas (Donald Campbell and L. A. Thompson, both of Tulsa, Okl., of counsel), for appellee Stanolind Oil & Gas Co.

William Pannill, of Fort Worth, and R. E. Seagler and Clayton L. Orn, both of Houston, Smith & Smith, of Fort Worth, Walter Kimmel, of Tulsa, Okl., J. B. Dibrell, Jr., of Coleman, Carl P. Springer and John Sayles, both of Abilene, Sedberry & Williams, of San Angelo, Burges, Burges, Scott, Rasberry & Hulse, of El Paso, and A. M. Gee, of Findlay, Ohio, for appellees Ohio Oil Co., Humble Oil & Refining Co., Peerless Oil & Gas Co., Southland Royalty Co., Permian Oil Co., Leo C. and Irene Donahoe, Hargrove Hudson, et al.

Edwin H. Yeiser, of Austin, for appellees John H. and Eula Tyler.

H. L. Stone, of Pittsburg, Pa., John E. Green, Jr., of Houston, and Peveril O. Settle, Wm. L. Wise, and W. E. Allen, all of Fort Worth, for appellee Gulf Oil Corporation.

SUTTON, Justice.

The suit is a vacancy (a boundary) suit. J. A. Glasscock was the original plaintiff, and some sixty-seven individuals and concerns were named as defendants. The State, under the statute, intervened.

So far as the suit on this appeal is concerned, it is prosecuted by Glasscock in pursuance of his valuable, preference, property right to acquire the oil and gas lease on a strip of land 92 vrs. east and west and 1209 vrs. north and south claimed to be vacant and to lie between Survey 104, T. C. Ry. Co., on the west and the M. D. Bryant strip on the east located in Pecos County.

Plaintiff filed his suit August 15, 1940, under the Act of 1931, Chapter 271 as amended and now embraced in Art. 5421c, Vernon's Ann.Civ.St. Various defendants, who are appellees here, filed pleas of res adjudicata, estoppel by judgment, judicial estoppel and stare decisis. The trial court granted motions to try these special pleas separately and on the trial thereof rendered judgment for the defendants. From that judgment Glasscock and the State have appealed.

Glasscock presents two points. Number One is the Court erred in sustaining the special pleas because the evidence, opinions and decisions introduced are insufficient to establish such pleas, and Number Two, that the court erred in refusing to follow the reservation of the Supreme Court made in Stanolind Oil & Gas Co. v. State, 129 Tex. 547, 101 S.W.2d 801, 104 S.W.2d 1, wherein the Supreme Court expressly reserved the location of the Southeast Corner Section 70, Block 1, I. & G. N. Ry. Co. lands in Pecos County.

Glasscock in his brief says:

"If the Dod, or car spring corner at S. E. 70 is accepted as being the true original Kuechler corner at the S.E. 70, then this vacancy does not exist. If, however, we are permitted to prove the location of the original Kuechler corner at S.E. 70, which we allege to be approximately 143.3 vrs. West of the car spring corner, then the vacancy, approximately 92 vrs. wide and 1209 vrs. long, is established."

The corner relied upon to establish the vacancy is 143.3 vrs. west and 86.7 north of the car spring corner.

The question, therefore, is: Is the S.E. Corner of Survey 70 established as a matter of law at the Car Spring or Dod Corner? If it is, then the trial court correctly rendered judgment for the defendants, because as said by Glasscock, in such circumstances the vacancy cannot exist.

Very much has been done in and written about the area involved in this suit and the territory in the vicinity thereof, commencing with the Fred Turner case, Smith v. Turner, Tex.Civ.App., 13 S.W.2d 152; Tur-

ner v. Smith, 122 Tex. 338, 61 S.W.2d 792. The so-called River Surveys, that is to say, those embraced in Block 1, I. & G. N. Ry. Co. Original Grantee, and lying along the west bank of the Pecos River, were surveyed by Jacob Kuechler in 1876. He established this block by running a traverse in a generally north and south direction along the west bank of the river from which he laid out the surveys embraced in the block by protraction. He marked many of the corners along the river but none on the west because the north, south and west lines were not run on the ground. By 1917 virtually all the evidence of the Kuechler corners had disappeared.

Under instructions from the Commissioner of the General Land Office, Capt. R. S. Dod, of Alpine, went upon the ground in 1917, primarily to determine if there existed a vacancy between Block 1, I. & G. N. Ry. Co. on the east and blocks west thereof. To do so he undertook to locate on the ground, as originally surveyed by Kuechler, Block 1, the blocks west and Runnels County School Land League No. 3. The final result was the survey and establishment of two vacancies generally known as Yates 34½ and the larger Yates 12341. A rough plat is inserted to show generally the locations in the vicinity; no accuracy is claimed for the plat:

T1 to T6, inclusive, designated the
Fred Turner Vacancy Surveys.

Dod worked over a period of nearly two years. He ran the lines of the river surveys in Block 1 and marked their corners, which markings are to be found on the ground at this time. Dod's field notes, which were ultimately accepted by the Land Office and upon which patents were issued, for the Yates Vacancy Surveys call for Dod's marked and monumented corners of the river surveys which they show to adjoin.

The Fred Turner Case was brought, tried and ultimately determined on the theory and established claim that Dod correctly located the larger Yates Survey 12341 from his monumented west lines of the river surveys and the vacancies sought and recovered lay between the west line of this Yates survey and river survey 61 and the true position on the ground of Block 194, G.C. & S.F. Ry. Co. In the Turner case the State recovered and sold to Turner some 560 acres of vacant land.

The Bob Reed Vacancy Survey, recovered by the State in the case of Douglas Oil Co. v. State, 122 Tex. 377, 61 S.W.2d 807 (Id., Tex.Civ.App., 70 S.W.2d 452), calls for river survey 61 in this manner:

"Beginning at the most southerly southwest corner of Sur. 34½, Blk. 194, G.C. & S.F. Ry. Co., a mound of stone in the north line of Sur. 61, Blk. 1, I. & G.N. R.R. Co.,

"Thence west 188.2 varas to the northwest corner of said Sur. 61, a rock mound marked (N.W. 61 DOD);

"Thence south along the west line of said Sur. 61, 701 varas to a stake a northeast corner of Fred Turner, Jr. Sur. No. 1."

The metes and bounds description contained in the judgment called for Dod lines and corners in both survey 61 and 62.

The state brought a suit in the District Court of Travis County to recover the Fred Turner vacancy surveys and oil previously produced therefrom. The case is called the "Mid-Kansas Case." A judgment was rendered for the State in that case and a large sum of money recovered for the oil produced and taken from the lands from which no appeal was taken.

■ The lands involved in these cases were and are valuable oil-bearing and producing lands. Each of the cases is discussed in the case of State v. Ohio Oil Co. et al., Tex.Civ.App., 173 S.W.2d 470, commencing with par. (11), page 478 (writ denied for want of merit). That case, we think correctly decides and disposes of the first point made here and no further discussion need be had, because all the surveys in Block 1, the river block, are a part of a system and what is said of the Dod marked lines and corners of one survey applies to all of them marked by him.

It is hardly necessary to say that Block 1 is a system of surveys, because they were all protracted off of a common base line as heretofore indicated and were a part of a continuous piece of work. Moreover, it has been held they constitute a system, State v. Stanolind Oil & Gas Co., Tex.Civ. App., 96 S.W.2d 297, and approved in the same case by the Supreme Court, 129 Tex. 547, 101 S.W.2d 801, at page 806, 104 S.W. 2d 1.

The court in State v. Ohio Oil Co., supra, held briefly the State is estopped to claim the benefits of the judgments in the Turner, Douglas Oil Co. (California case) and the Mid-Kansas cases based upon the monumented corners of Dod which it then contended were correct, retain the lands and then sue to recover other lands based upon a claim the Dod locations were incorrect. This conclusion is too obvious to require comment.

There is still another reason why this claimed vacancy cannot exist. Dod ran and monumented the boundaries of Yates Vacancy Survey 34½. The east line of 34½ is coincident with the west lines of the river surveys as established by him. In Douglas Oil Co. v. State, supra, 61 S.W.2d at page 807, the Supreme Court said:

"The Yates survey 34½, the Fred Turner Jr. survey No. 1 and survey No. 61 in block 1 are all definitely fixed upon the ground, * * *."

This determination and adjudication fixes the west boundaries of Survey 101, T.C. Ry. Co. and Runnels County No. 3, since 101 and 34½ have a common corner and 101 and No. 3 a common corner. In other words, the western boundaries of 34½, 101 and No. 3 are segments of the same straight line. This is clear from Stanolind Oil & Gas Co. v. State, 129 Tex. 547, 101 S.W.2d 801, 104 S.W.2d 1, as well as the various calls. Use of the Northwest Corner of 34½ —fixed on the ground as heretofore stated as determined by the Supreme Court—excludes the area claimed to be vacant, because the common corner of 101 and Runnels County No. 3 is 1209 varas north of the northwest corner of 34½. There is no

room left for it for the reason the plaintiff in this, case claims a corner for the S.E. of 70 from which the claimed vacancy must be located 143.3 varas west and 86.7 varas north of the car spring corner. Thus located, the lines would move both north and west from those established ·by Dod, and adopted as a basis of recovery in the three cases heretofore referred to. It is too obvious this may not be done to require further discussion and any attempt to add to what has been said already in State v. Ohio Oil Co., supra, as herein indicated and pointed out would be futile.

■ This brings us to a consideration of the reservation claimed. The contention is made that the location of the S.E. Corner of 70 was reserved so far as future litigation is concerned by the Supreme Court in State v. Stanolind Oil & Gas Co. on the motion for rehearing, 129 Tex. 547, 104 S.W.2d 1, 2, wherein it is said:

"In view of the contentions on rehearing we make the observation that our opinion is not to be construed as a fact finding as to the location on the ground of the southeast corner of survey 70. That issue was not submitted to the jury in the trial court and the evidence is conflicting with reference thereto. We simply hold that the State cannot complain in this proceeding of our action in deciding in this case on the basis that the car spring corner is the true one, in view of its pleading and contentions in the lower. courts."

As pointed out in the opinion in this case the State had alleged that the Southeast Corner of 70 is located at the car spring corner and had contended in its brief that such corner is located on the ground at the car spring corner as a matter of law. As we understand the opinion, the case was determined upon that basis. It was also observed in the opinion on the motion for rehearing that the question of judicial estoppel was not determined because of the holding on the questions discussed. The opinion on the motion simply makes clear the case was decided on the basis of the State's contention and position the S.E. Corner of 70 is located at the car spring corner as a matter of law and that no other questions other than those discussed are determined. This we regard as the full extent of the quoted language. If, however, it might be said there was an express reservation it has nevertheless been subsequently held, as heretofore pointed out in State v. Ohio Oil Co., supra, that the corners and lines of a part of the system have been located as a matter of law according to Dod's work from the car spring corner and the State because of the benefits derived therefrom is estopped to set up a different location and position for that corner. This we think inescapable.

■ The State has been a party to all the several cases mentioned herein and one or more of the appellees here have likewise been a party to one or the other of those cases. As to Glasscock, the most that may be said of his position is that he has the preference right to acquire the oil and gas lease on the lands sought to be established as vacant if and when it be determined the vacancy exists and the title in the State. Glasscock acquires no title until then for, as said in United Production Corp. v. Hughes, 137 Tex. 21, 152 S.W.2d 327, second column page 332, " * * * the State's title to the land must be litigated and successfully maintained before Hughes (a vacancy applicant such as Glasscock is here) can be said to be entitled to an oil and gas lease thereon."

Much might be said and added to this opinion in a review of the many cases decided touching upon the question presented and those involving the territory where this vacancy is claimed to be but to do so would serve no purpose. The question is single and it seems to us definitely and conclusively answered by prior decisions.

The judgment of the trial court is regarded as correct and it is affirmed.