## WOOLLEY et al. v. TIPPETT.

### No. 4833.

Court of Civil Appeals of Texas. El Paso.

Feb. 27, 1952.

Rehearing Denied March 26, 1952.

Simmons & Jacobs, Ed Roy Simmons and Julius C. Jacobs, all of Corsicana, David W. Stephens, W. B. Edwards, both of Ft. Worth, for appellants.

M. E. Sedberry, Robert P. Amacker, both of San Angelo, for appellee.

SUTTON, Justice.

This is a boundary suit and is here for the second time. The appeal is from the District Court of Crockett County. Our former opinion is reported in Tex.Civ.App., 230 S.W.2d beginning at page 283, where a detailed statement of the case is made, much of which will not be repeated here.

As is reflected in our former opinion the suit involves the ground location of Survey No. 3, Block B, G. C. & S. F. Ry. Co. lands,

Plaintiffs' metes and bounds description in their petition corresponds to the calls in Armstrong's Field Notes for said survey as copied in the opinion, supra, except the beginning point is described as "a 2-inch pipe set 1079 vrs. S. 50 E. from the East corner of Survey No. 26, in Block 36 H. & T. C. R. R. Co. 181.1 acre section," and the second call is for a stake, "an interior corner of Section 12 Block PP, T. C. Ry. Co.", whereas Armstrong's call is for an interior corner of "Sur. No. 2 of this block."

On this, the second trial of the case, the Gulf Oil Corporation as owner of a mineral interest in Section 12 Block PP and the owners of the fee in said section intervened and set up that the metes and bounds description contained in Plaintiffs' petition conflicted with the west and north portions of Section 12 PP, which conflict involved a strip out of section 12 some 335 vrs. wide, north and south, and 1289 vrs. east and west, saying the call for an interior corner of Section 12 was an error inasmuch as said section had no interior corner but was a rectangular section 950 vrs. wide and 3800 vrs. long. Section 12 is a senior survey and it was agreed on the trial of the case the intervenors should recover as against all parties to the suit such strip and the judgment was accordingly.

The case as between the Plaintiffs and Tippett was submitted on a single issue, which is:

"Do you find from a preponderance of the evidence in this case that the original surveyor, J. W. Armstrong, in 1884, located or intended to locate, Survey No. 3, Block B, GC&SF Ry. Co., substantially as shown on the map of John Klotz, being Plaintiffs' Exhibit O?"

The jury answered in the affirmative, but on the motion of Tippett the Court rendered judgment that Plaintiffs recover 17.18 acres only against the defendant Tippett, and as to the remainder of the lands sued for that they take nothing, thereby adopting the location of said Survey 3 as made by Tippett's surveyor, James Avera...

This case on the former appeal gave us much trouble and on this has occasioned none less. Only two witnesses testified, the two Surveyors, Klotz for the Plaintiffs and Avera for Tippett. Most of our difficulties have arisen from the fact that senior Block 36 to the West was an office survey made in 1873 by Doyle and none of the lines identified on the ground, and Armstrong's work likewise an office survey and none of his lines or corners marked on the ground. Nyland, a State surveyor, went into the area in 1888 to check, correct and mark on the ground lands previously appropriated. He surveyed Block 36 H. & T. C. and established the lines and corners. Nyland altered Section 26, Block 36, and divided it into two separate tracts and definitely identified its boundaries.

Mr. Klotz disregarded all other calls and for his location of Survey 3 began at the point heretofore noted 1079 vrs. S. 50 E. from the east corner of the eastern portion of Section 26 as established by Nyland in 1888, and then ran it out according to the other calls in the field notes, except as above indicated. Mr. Avera disregarded the calls for adjoinder and made his locations course and distance from the established original corner in University Block 14 to the east, as pointed out in our former opinion. Both surveyors agree Section 1 is properly located in that manner. Its location has never been questioned and cannot be. There has been considerable confusion with respect to the other surveys in Armstrong's Block B. The original field notes and location for Section 2 made in March 1884 were abandoned before the field notes were returned and approved and Armstrong in May 1884 relocated 2 much further north and hence the calls for original 2 in the field notes for 3 were no longer material.

As we pointed out in our former opinion there was much doubt and confusion about the locations in Armstrong's Block B and the position given it on the Land Office maps until 1927, when Estes corrected the field notes and returned them to the Land Office. He undoubtedly adopted the Nyland locations for Block 36 and respected the calls for adjoinder and his location for No. 3 is substantially that made by Mr. Klotz, but his location of 3 conflicted with 12 PP

already noted. Mr. Goodfellow, a State licensed surveyor, made similar locations for the Block and Surveys 2 and 4 were patented on the corrected field notes to the defendant, Tippett. Section 8 PP to the east of 3 and 4 was originally a reversed L shape and conflicted with 3, as reflected by the working sketch which was reproduced in our former opinion. The field notes for 8 were corrected and the conflict eliminated and it was likewise patented to Tippett on the corrected field notes. It thus appears an area has been assigned to each of the Armstrong locations, identified on the ground and accepted without dispute or question, except 3. If 3 is not located as Estes, Goodfellow and Klotz locate it, with the exception of the overlap with 12 PP, which has been eliminated by the judgment in this case which stands, it will be largely wiped out and a vacant area left which was Armstrong's duty and purpose to survey in order that it might be sold and appropriated.

Armstrong's sole duty and purpose was to sectionize the vacant area lying between the senior blocks to the west and the senior blocks and surveys to the east. This he undertook to do by platting from the information available to him. Had he made an actual survey on the ground he could not have known when he reached the eastern boundary of Block 36 without making a survey of the Block, because it was not identified at the time on the ground. It may well have been Armstrong was mistaken as to the proper ground position of Block 36 as is indicated by his third call in his corrected field notes for No. 2 when he calls for 1910 vrs. north along the east line of No. 4 to the north corner of 4 and the east corner of Section 22, Block 36, which line is given a length of 357 vrs. by Estes, Goodfellow and Klotz, respecting the Nyland locations in Block 36. But, as said in Stanolind Oil & Gas Co. v. State, 129 Tex. 547, 101 S.W.2d 801, loc. cit. 807 (2, 3), that would not reverse the rule and give preference to distance, but rather set the matter at large and leave the court free to construct the survey in such manner as will give effect to the intention to be determined from the entire description. Of course, if the course and distance calls were consistent with the other calls found in the field notes and with the intention of the original locator as gathered from the field notes the course and distance calls would be adopted. In the instant case, all the other surveys having been resurveyed and corrected and accepted as corrected, giving effect to the course and distance calls will benefit no one but will take away from No. 3 virtually all its patented acreage and create a vacancy, whereas if the adjoinder calls be adopted and applied to the Nyland locations, Armstrong's intention and purpose will be attained and the patent for No. 3 accorded a substantial portion of the acreage called for.

█ Under the rule announced in Gulf Oil Corporation v. Outlaw, 136 Tex. 281, 150 S.W.2d 777, and adhered to in State v. Ohio Oil Co., Tex.Civ.App., 173 S.W.2d 470, and by us in Thiesen v. Stanolind Oil & Gas Co. Tex.Civ.App., 210 S.W.2d 417, the Nyland survey and locations became the official locations for the surveys in Block 36 and must be respected and the junior surveys and blocks adjusted to them.

█ The facts in the case are not really disputed, but the two surveyors merely adopted different theories for constructing No. 3, and the issue now we think one of law as to which should be and by rights ought to be adopted. There is no other survey to which the acreage left vacant by the judgment of the trial court may be allotted other than No. 3, and we think under the facts and circumstances of the case the Klotz location should be adopted. However, if we are mistaken in the conclusion just announced and there is presented an issue of fact, then the jury were undoubtedly justified under the facts of the case in reaching the conclusion they did as reflected by their answer to the issue submitted to them.

It may be said in explanation of the action of the trial court on the motion for judgment notwithstanding the verdict, except for what was said in our former opinion he would have probably reached the same conclusion reached here by us.

The judgment of the trial court will be accordingly reversed, insofar as it limited

plaintiffs' recovery to the land described in the judgment, and judgment here rendered that the plaintiffs recover the land sued for by them, except the area found to be in conflict with Section 12, Block PP, and recovered by the Intervenors Gulf Oil Corporation, et al., which recovery is affirmed.

The judgment is, therefore, in part affirmed and in part reversed and rendered.

PRICE, C. J., did not participate.